No. 32.—JOHN G. WINTER, plaintiff in error, *vs.* JOSHUA K. BULLOCK, defendant.

[1.] The holder of a promissory note, who transfers it by delivery, for a valuable consideration, warrants by implication, unless otherwise agreed between the parties, that he is a lawful holder, and has a just and valid title to the instrument, and a right to transfer it by delivery. He also warrants, in like manner, that the instrument is genuine and not forged or fictitious, and that he has *no knowledge* of any facts which prove the instrument, if originally valid, to be worthless, either by the failure of the maker, or by its being already paid, or otherwise to have become void or defunct; and any *concealment* of these facts, on the part of the transferer of the note, operates as a *fraud* on the rights of the transferee, for which a Court of Equity will entertain jurisdiction, to compel a discovery, and grant relief.

In Equity, in Muscogee Superior Court. Tried before Judge ALEXANDER, November Term, 1848.

Winter *vs.* Bullock.

John G. Winter filed his bill in Muscogee Superior Court, charging, that in the year 1837, Joshua K. Bullock, then and now a citizen of North Carolina, sold to Morrison & Harrison, of the County of Richmond, State of Georgia, two race horses, Kite and Southerner, for the sum of $2900, and warranted the said horses to be sound; that Morrison & Harrison gave their note, due 1st October next thereafter, for the amount of said sale; that at the time of the sale, Southerner, one of said horses, was wholly unsound and worthless, which fact was known to Bullock; that subsequently, in 1839, said Winter discounted the said note for the said Bullock, giving him therefor a draft on Starke & Pearce, of Fayetteville, North Carolina, at three months, for $1400, and the balance in money.

The bill further charges, that suit was brought against Morrison & Harrison, on said note, to which a plea was filed, setting out that the consideration of the said note had partially failed, from the unsoundness of the said horse; that Bullock was notified of said plea, and promised to resist and defend the same; that on the final trial, said plea was sustained and a verdict rendered only for one half of said note.

The bill further charges, that suit is now pending against said Winter, at the instance of said Bullock, upon the said draft. The complainant also alleges, that he has no means of proving the fact that said draft was delivered by him to said Bullock, upon the consideration and in the manner as before stated, except by a discovery from said Bullock in Chancery, and that at the time of his discounting said note for said Bullock, he had *no knowledge* of the existence of the warranty of said horses.

The bill prayed that Bullock might be compelled to make a full discovery of the facts charged, and deliver up the said draft to be cancelled; and in the mean time, enjoined from negotiating the same, and from farther prosecuting his suit thereon.

To this bill a general demurrer was filed, which, upon a hearing, was sustained by the Court. To this decision complainant excepted, and now alleges the same to be erroneous.

H. L. BENNING, for plaintiff in error, cited—

*Story Pr. Notes*, §§118, 119, *and note* 4, 389, 180, 187. *Bailey on Bills*, 405. *Chitty do.* 271. 2 *Danl. Ch. Pr.* 12. 1 *Story's Eq.* §§207, 208, 209, 215, 216, 217, 383.

H. Holt, for defendant, cited—

*Story Pr. Notes*, §118, *et seq.* §187, *et seq.*   *Buller's N. P.* 277. 1 *Dallas*, 252, 444.   1 *Esp. R.* 446.   1 *Caines' Rep.* 117.   10 *Ves.* 204.   15 *East*, 7, 13, *note*.   1 *John. R.* 409.   6 *Mass.* 321.

*By the Court.*—Warner, J. delivering the opinion.

The error assigned upon the record to the decision of the Court below is, the sustaining the general demurrer to the complainant's bill.  ·

The complainant discounted a promissory note given by Morrison & Harrison to the defendant, Bullock, for two race horses, Kite and Southerner, for the sum of $2,900, for the benefit of Bullock.   The complainant gave the defendant, Bullock, in payment for the note, a draft on Starke & Pearce, of Fayetteville, North Carolina, for $1,400, at three months, and paid him the balance therefor in money.   The defendant, Bullock, instituted suit on the draft against the complainant, Winter, in the Superior Court of Muscogee County, to recover the amount thereof: whereupon, the complainant filed his bill, praying for discovery and relief, and that the suit at law be enjoined.   The complainant alleges, that at the time of the sale of the horses by Bullock to Morrison & Harrison, he *warranted* them to be sound, whereas one of them (Southerner) was wholly unsound and worthless, which fact was *known* to Bullock.

The complainant also alleges, that he instituted suit on the note purchased by him from Bullock, against the makers, Morrison & Harrison, who plead thereto a partial failure of consideration, in consequence of the unsoundness of the horse Southerner, and on the final trial of the cause, the plea was sustained and a verdict rendered in his favor for only one half of the amount of the note ; and that he has no means of proving the fact that said draft was delivered by him to said Bullock, upon the consideration and in the manner before stated, except by a *discovery* from said Bullock in Chancery.   The complainant also alleges, that at the time of his discounting the note of Morrison & Harrison, for the benefit of Bullock, he had *no knowledge of the existence of the warranty* of the soundness of the horses, made by Bullock to them.

[1.] The complainant's equity then is, that the defendant transferred to him, by delivery, the note of Morrison & Harrison, for a valuable consideration, and *concealed* from him the fact of his knowledge of the unsoundness of the horse Southerner, and also *concealed* from him another fact, within his own knowledge, that he had warranted the horse to be sound, by means whereof the makers of the note were enabled, successfully, to maintain their plea of partial failure of consideration to the action instituted by him thereon against them. Will the facts relied on by the complainant entitle him to the discovery and relief sought by his bill? We think they are sufficient for that purpose, and that the Court below erred in its judgment in sustaining the demurrer.

A party who transfers a promissory note by delivery, for a valuable consideration paid him therefor by the transferee, is not exempt from all obligations or responsibilities. In the first place, he warrants by implication, unless otherwise agreed, that he is a lawful holder, and has a just and valid title to the paper, and a right to transfer it by delivery. He impliedly warrants that the instrument is genuine, and not forged or fictitious. He also warrants, in the same manner, that he has *no knowledge of any facts* which prove the instrument, if originally valid, to be worthless, either by the failure of the maker, or by its being already paid, or otherwise to have become void or defunct; for any concealment of this nature would be a manifest fraud. *Story on Promissory Notes*, 123, §118. There can be no doubt that if a man assign a bill for any sufficient consideration, *knowing it to be of no value*, and the assignee be not aware of the fact, the former would, in all cases, be compellable to repay the money he had received. *Chitty on Bills, 6th edition,* 146. In *Fern vs. Harrison*, (3 *Term Rep.* 759,) *Lord Kenyon* held it to be extremely clear, that if the holder of a bill send it to market without indorsing his name upon it, neither the morality or the laws of the country will compel him to refund the money for which he has sold it, if he *did not know at the time that it was not a good bill.* If he *knew* the bill to be bad, it would be like sending out a counterfeit into circulation, to impose upon the world, instead of the current coin, and the party receiving the money, *with such knowledge*, would be obliged to refund it. See, also, *Young vs. Adams,* 6 *Mass. R.* 186. *Martin vs. Morgan,* 5 *English Com. Law Rep.* 87. The

defendant, Bullock, at the time he transferred the note to the complainant and received the consideration for it, *knew* that one of the horses for which the note was given was unsound and worthless; and he also *knew* that he had *warranted* both the horses to be sound, but *concealed* these facts from the complainant, who had *no knowledge* of them. At the time of the transfer of the note by the defendant to the complainant, he *knew* that only one half of the consideration for which said note was given was valid and recoverable in law, and that the other half of the consideration of the note was void and worthless, and not recoverable by the complainant, who discounted it after its maturity. Such *knowledge* and *concealment*, on the part of the defendant, was a manifest fraud upon the rights of the complainant. The parties did not deal on equal terms. The true definition of undue concealment, which amounts to a fraud, for which a Court of Equity will grant relief, is stated by *Mr. Justice Story* to be, " the non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communicate to the other, and which the latter has a right, not merely in *foro conscientiæ*, but *juris et de juré*, to know." 1 *Story's Equity Jurisprudence*, 216, §207. In *Belcher vs. Belcher*, (10 *Yerger's Rep.* 121,) it was held, that fraud, in a Court of Equity, properly includes all acts, omissions, and concealments, which involve a breach of either legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another. We have already shown, that the *concealment* of the unsoundness of one of the horses for which the note was given, and the warranty of soundness, by the defendant, when he transferred the note to the complainant, was a breach of his legal duty, and consequently gives to the Court of Equity jurisdiction of the cause.

Let the judgment of the Court below, sustaining the demurrer to the complainant's bill, be reversed.