## DANIEL F. RICE
### v.
## ANTHONY SILVERSTON.

*Opinion filed December 22, 1897.*

FRAUD—*when conveyance will be set aside for fraud.* A deed to a farm exchanged for worthless notes and a deed of trust upon property to which the maker thereof had no title will be set aside in equity, where it appears that the land given in exchange was situated in another State, and that the grantee in the deed to the farm had caused the notes and trust deed to be executed by parties who had no interest in the land, to aid in his fraudulent scheme, and that by artifice and deceit he induced the grantor to rely upon his representations and upon the papers purporting to convey title.

APPEAL from the Circuit Court of Jefferson county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

C. H. PATTON, and SIM T. PRICE, for appellant.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant, Daniel F. Rice, filed his bill in the circuit court of Jefferson county to enjoin appellees, Anthony Silverston and Emily, his wife, from conveying or encumbering certain lands, containing about four hundred and fifteen acres, situated in said county, which had been by deed conveyed by appellant to said Emily, and to set aside said deed because of the alleged fraud of said Anthony in procuring the same. Said deed had been filed for record in the recorder's office, and the recorder was also made a party defendant, to enjoin him from filing or recording any deed or mortgage of said lands of said Silverstons, or either of them. A temporary injunction was granted, but upon the final hearing, upon the amended bill, answer and replication, depositions and oral and documentary evidence, the injunction was dissolved and the bill dismissed. This appeal was then taken by Rice, the complainant, and the injunction continued in force until the further order of the court.

The only question is, whether or not Anthony Silverston obtained said deed to his wife, Emily, from Rice by fraud and deceit. The deed was made to said Emily at the instance of said Anthony, without any participation by her in the transaction, and, so far as the record discloses, for purposes of his own convenience. The farm in question was situated near Mt. Vernon, in said county, and was worth about $9000. The evidence tended to prove that Rice, being desirous of selling the farm, proposed to one Wirt, a real estate agent in Mt. Vernon, to pay him all over $8500 which he, Wirt, could obtain for the property on a sale. Wirt saw an advertisement in a St. Louis paper of some notes, secured by deed of trust, for sale or exchange for real estate, and through correspondence the owner, who proved to be the appellee Anthony Silverston, came to Mt. Vernon to negotiate with Rice for an exchange of the notes and deed of·trust for the latter's farm. Rice afterward also met Silverston in St. Louis, and negotiations were had at both places, which resulted in an option agreement, signed by the parties, and later the exchange of the notes and deed of trust for the farm, as proposed. The notes and deed of trust were worthless, and the evidence was sufficient to show that Silverston knew that fact, and was a party to a fraudulent scheme, concocted by himself and others, for the issue of these notes and deed of trust by a fictitious or irresponsible person upon 1280 acres of land in Clay county, Kentucky, which was of but little value and to which the maker of the deed of trust had no title. Rice became the victim of this fraudulent scheme.

This tract of 1280 acres was a part of a large grant of 50,000 acres, which grant was made by the Governor of Virginia to Benjamin Wyncoop in 1786. It appears that in 1856 Benjamin Wyncoop, Jr., made a deed of the 50,000 acres to one Carroll, and that that title, by *mesne* conveyances, went to Lewis Wheelock in 1893, who exchanged the 1280 acres of the tract with Silverston for the equity

of redemption, of merely nominal value, in certain real estate in St. Louis. The Wyncoop title to the 50,000 acres had been wholly extinguished in 1840 by conveyances to Walker and others, so that the deed of Benjamin Wyncoop, Jr., to Carroll, in 1856, and from which Wheelock traced his title, conveyed nothing. By arrangement between Wheelock and Silverston, Wheelock's title to the 1280 acres, which was of no value, was conveyed to McKee, who was in business with Silverston, for the expressed consideration of $18,000, and Silverston conveyed in exchange his title, of little or no value, to the St. Louis lots to Maggie Raleigh, Wheelock's employee, at Wheelock's request, for the expressed consideration of $24,000, Miss Raleigh giving back a mortgage of $5000, which Wheelock testified made the difference. Silverston then procured McKee to convey the 1280 acres by deed of general warranty, dated October 23, 1895, to John Foster, for the expressed consideration of $19,200, and Foster gave back the note of $8900 and the three interest notes of $534 each, and the deed of trust on the 1280 acres securing the same, which being transferred to Silverston, were by him exchanged for appellant's farm. The evidence shows that Maggie Raleigh, McKee and Foster were mere dummies, employed, respectively, by Wheelock and Silverston in the transaction between themselves, and the purpose of Silverston was to create promissory notes aggregating upwards of $10,000, secured by deed of trust on said real estate, appearing from the face of the papers to be worth nearly double that amount, when in fact said notes were of no value whatever.

Silverston presented to Rice, during the negotiations, a purported abstract of title of the Kentucky lands, which appeared to have been certified to by "George & Locke, Investigators of Land Titles," at Louisville, Ky., in 1895, showing on its face a good title to the 1280 acres in Foster when he made the deed of trust. This abstract, while tracing title through the Wyncoop grant, failed

to show the conveyances to Walker and others in 1840, and a deed prior thereto for a part of the tract, which conveyances, as before stated, entirely extinguished the Wyncoop title, which title it is pretended passed, by successive conveyances as to the 1280 acres, to Foster. The evidence showed that there were no such persons or firm as "George & Locke" engaged in the business of investigating land titles at Louisville in 1895; that the purported certificate was a forgery, and the names thereto were fictitious and the abstract a fraudulent contrivance, either gotten up at the instance of Silverston, or used by him with knowledge of its fraudulent character, to impose upon the purchaser of the notes and deed of trust. The evidence also tended to show that the plat of the Wyncoop grant of land attached to the abstract, so far as it appeared to have been divided into separate lots and tracts, was fictitious. No effort was made by the defendant to prove the certificate of "George & Locke" was genuine, or that the notes and deed of trust had any actual value, but the defense is that the doctrine of *caveat emptor* applies; that Silverston had no knowledge of the value of the 1280 acres of land or of the condition of the title to it, and so told Rice, and advised him to go to Kentucky and look at the land for himself, and that he made no false or fraudulent representations to Rice to bring about the trade.

This defense cannot prevail. The lands were in a distant State, and while the evidence does not show that Silverston did anything to prevent Rice from going there and looking at the lands before making the trade, but apparently encouraged Rice to make the trip, still, when the parties were negotiating in St. Louis, Silverston produced one Severs, who, Silverston claimed, held the notes and deed of trust as collateral security for a loan and who claimed to be familiar with the lands, and who stated to Rice, in the presence of Silverston, that they were worth $20 per acre, Silverston insisting at the same time that

they were worth $25 per acre. The evidence also tends strongly to show that, as an inducement to Rice to make the exchange, he told Rice in Mt. Vernon that he would guarantee that the title was good. But be that as it may, we are satisfied from the proof that the deed to the farm was obtained by Silverston by the use of artifice, deceit and fraud. While pretending that he wished Rice to examine the land for himself and rely upon his own judgment, he succeeded, by indirection, in making Rice believe that such an investigation would not be necessary. While appearing reluctant to give Rice $500 in addition to the notes for the farm, as Rice demanded, he gave Wirt, whom he recognized as Rice's agent, his note for $500 to induce Rice to agree to allow him to redeem said notes within one year. As might be supposed, Rice was willing to allow such redemption, and it is apparent that Silverston's purpose was to create in the mind of Rice the belief that these fraudulent papers were of such value that he would not exchange them for the farm unless it was a part of the contract that he could have a year to redeem them. Many other facts and circumstances were shown, not necessary to be set out here, tending to prove fraud on the part of Silverston. Silverston did not produce, and apparently made no effort to produce, McKee, Foster, Severs, or any of the parties to the scheme which resulted in the creation of the notes and deed of trust, and Foster could not, after diligent search on behalf of Rice, be found.

While it is true that prudence on the part of Rice would, under ordinary circumstances, have required him to examine the lands or otherwise to have satisfied himself of their value, and to have ascertained the state of the title, still, in view of the fact that the lands were in another State remote from where he lived, and in view of the artifice and deceit resorted to by Silverston to induce Rice to rely upon his representations and upon the face of the papers and in presenting to him a fictitious

abstract of title, he should not be denied relief in this case on the grounds urged. While the conduct of Rice in the transaction may not have been altogether ingenuous, still we do not find in the record sufficient evidence that he was himself in such fault as to preclude him from relief. He doubtless thought he was making a contract very advantageous to himself, and was anxious to close it without unnecessary delay or opportunity for interference from others; but it is clear that it was a part of the scheme of Silverston to make Rice anxious to close the deal, and there is no principle of equity which we are aware of, which Silverston can invoke, under the facts in this case, to deny to Rice the relief which he seeks.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree as prayed in complainant's bill.

*Reversed and remanded.*