# GORDON *v.* IRVINE.

1. The holder of a promissory note who has knowledge of the insolvency of its maker is under a legal and moral obligation to impart such knowledge to an innocent purchaser before negotiating it. When he fails to do so, and the purchaser is thereby injured, an action of deceit will lie by the latter against the former.
2. If the vendor of the note is aware of such facts as will lead a

reasonable man to infer the insolvency and worthlessness of the paper, this is equivalent to actual knowledge on his part.

3. The judge has a right to interrogate a witness introduced by either party, but this should not be done in such a way as would have a tendency to cast discredit upon the witness. While the form of the question put to the witness in this case by the judge was not entirely proper, yet a new trial will not be granted on this account, when it appears from the entire evidence that the verdict is manifestly correct.

4. The charge, construed as a whole, fairly covered the issues in the case; and the verdict being right under all the testimony, the court did not err in overruling the motion for a new trial.

Argued June 10,—Decided July 23, 1898.

Action of deceit. Before Judge Ross. City court of Macon. September term, 1897.

*Hardeman, Davis & Turner,* for plaintiff in error.
*H. F. Strohecker,* contra.

LEWIS, J. Irvine brought his action against Gordon, alleging that the defendant had damaged him by deceit and fraud in the sum of $240, besides interest and protest fees, for that the defendant, keeping himself concealed, procured his clerk, one Chapman, to come to plaintiff's store about June 1, 1896, and state he wished to examine a piano for another party, whose name he did not give, but who, plaintiff charges, was the defendant, with a view of buying a piano, plaintiff being a dealer in pianos. Chapman selected a piano of the value of $450, and said he would see his party and return. About June 8, 1896, Chapman returned to plaintiff's store, and said he was ready to buy the piano, and said he wished to pay part cash and part in a note, not saying what kind of note. To this plaintiff assented. Chapman then paid plaintiff, by his individual check, a part of the purchase-money, and handed plaintiff a promissory note signed by George T. Harris, for $246, due October 1, 1896. Plaintiff suspecting nothing, and not knowing that Harris was insolvent, being unacquainted with his business affairs, save that he was engaged in an apparently large wholesale business, which was well calculated to deceive those ignorant, as plaintiff was, of his real financial condition, took the note, and asked Chapman where the piano should be delivered; whereupon Chapman re-

plied that he would notify plaintiff later. About June 9, 1896, an order came to deliver the piano at a designated place, which was the residence of the defendant, and the piano was accordingly delivered there, and went into the possession of the defendant. After this delivery of the property plaintiff placed the note in bank, and then for the first time discovered that it was worthless on account of Harris's insolvency; all of which it was alleged was known to defendant, who procured the note to be so made that it would not be required to be indorsed in order to be transferred, that he might defraud plaintiff or some other person. Harris was never indebted to Chapman, and never gave him the note, but defendant procured Harris to make the note, knowing at the time Harris made the note and at the time the defendant procured Chapman to deceive and defraud plaintiff with the note, that it was worthless and would not be paid. When plaintiff learned that the note was worthless he applied to the defendant before its maturity to redeem it and pay him the $240 and take the note, which defendant refused to do and has not done; and plaintiff now brings the note into court and makes a continuing tender of it to the defendant. The defendant demurred generally to the declaration. The court overruled the demurrer. To this the defendant excepted. There was a verdict for plaintiff. The defendant's motion for a new trial was overruled, and he excepted.

1. It is contended by plaintiff in error, that there was no cause of action set forth in the declaration, because there was no misrepresentation of any material fact alleged, nor were there any facts set forth showing that the defendant had in any way deceived plaintiff. Error is assigned in not sustaining the demurrer on these grounds. The contention of counsel for plaintiff in error seems based upon the theory that, in order to maintain an action on the case for deceit growing out of such a transaction as was had in the present instance, there must have been a positive representation made by the vendor of the note, which he knew at the time to be false, and which was innocently acted on by the defendant to his injury. Actual moral fraud may be as successfully perpetrated by silence as by words. This principle is settled by the code. Section 3534 of the Civil Code pro-

vides that " Concealment of material facts may in itself amount to a fraud — 1. When direct inquiry is made, and the truth evaded.   2. When, from any reason, one party has a right to expect full communication of the facts from the other.   3. Where one party knows that the other is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silence.   4. Where the concealment is of intrinsic qualities of the article which the other party, by the exercise of ordinary prudence and caution, could not discover."   Section 4027 declares that "Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud."   If the vendor knew of the insolvency of the maker of this note that he sold, or if he had knowledge of any fact which tended to show the worthlessness of the paper, was he under obligation to disclose this fact to the purchaser?   The answer to this question will be found in section 3685 of the Civil Code, which declares that " Every transferor of a negotiable instrument, whether by indorsement or delivery, warrants (unless otherwise agreed by the parties) that he is the lawful holder and has a right to sell, that the instrument is genuine, and that he has no knowledge of any fact which proves the instrument to be worthless, either by insolvency of the maker, payment, or otherwise."   The law governing the rights and liabilities of parties in regard to such transactions entered into and formed a part of their contract, and when this note was traded to the defendant in error, the vendor, by keeping silent as to the solvency of its maker, occupied no better position than if he had expressly warranted that he had no knowledge of any fact which tended to prove the instrument to be worthless; and the vendee had the right to act upon the presumption that no such knowledge existed in the vendor, otherwise it would have been disclosed when the contract was made.   Some respectable authorities have gone to the extent of saying that in order to maintain an action for deceit, it does not necessarily follow that a fraudulent intent should be proved.   For instance, in the case of Lobdell v. Baker, 1 Met. (Mass.) 193, it was held, that the holder of a note who fraudulently procured it to be indorsed by a minor, and afterwards sold it to a person who relied on the validity of such

indorsement, was liable to an action by such person, though at the time of sale he had no fraudulent intent.    Selling the note without erasing such indorsement, or disclosing the minority of the indorser, was tantamount to a direct affirmation by the seller that the indorsement constituted a valid contract.    This was an action of trespass upon the case.    In the same case, reported in 3 Met. (Mass.) 469, it was held, that though the seller gave no-tice to the purchaser that the indorsement by the minor was worthless, yet if such purchaser sold the note without disclosing the infirmity of the indorsement, his vendee, if he suffer there-from, may maintain an action for indemnity against the first seller.    See Grinnell on Law of Deceit, §§ 34, 40 et seq., and authorities cited.    Section 3814 of the Civil Code seems, how-ever, to imply that fraudulent intent in the vendor is necessary to support an action for deceit; but that section declares that mere concealment of a material fact, unless done in such a man-ner as to deceive and mislead, will not support an action, and further declares that in all cases of deceit, knowledge of the falsehood constitutes an essential element.    But even measured by this rule, we think the right of action on the case for deceit is clearly supported by the allegations in the plaintiff's petition. In the case of *Winter* v. *Bullock,* 6 *Ga.* 230, it was held, that the holder of a promissory note who transfers it by delivery, for a valuable consideration, warrants, among other things, by impli-cation, unless otherwise agreed between the parties, that he has no knowledge of any facts which prove the instrument to be worthless, either by the failure of the maker, or by its being al-ready paid, or otherwise to have become void or defunct; and " any concealment of these facts," says the court, " on the part of the transferer of the note, operates as a fraud on the rights of the transferee, for which a court of equity will entertain juris-diction, to compel a discovery, and grant relief."    This disposes not only of the demurrer, but of several grounds made in the motion for a new trial.

2.  Complaint was made in the motion, that the court erred in charging the jury, substantially, that they were to determine from the evidence in the case what facts were known to plaintiff and defendant about this note, and about the solvency of Harris,

the maker, at the time of the transaction, and charge them both
with all the knowledge they had, as disclosed by the testimony;
and that they were also to determine what inquiry a prudent
man, situated as they were, would have made, in the light of
what they actually did know, to find out anything further about
the matter, " and you are to charge them with making such in-
quiry as a prudent man would have made, and with knowing all
the facts which you believe such inquiry would have revealed to
a prudent man touching the note and the solvency of Mr. Har-
ris." Exception was taken to this charge, as it charged the de-
fendant with knowledge of such facts as inquiry might have led
to. We are not prepared to indorse to its fullest extent the
charge of the court above mentioned. But in the light of the
facts of this case, we do not think there was such material error
in the charge as would authorize the grant of a new trial. It is
true the defendant disclaimed any knowledge of the insolvency
of the maker of this note at the time it was negotiated to the
plaintiff; but it appears from the evidence uncontradicted that
the maker of the note, Harris, was a member of the firm of
Johnson & Harris; that Johnson had died; that a year before
this note was traded, the defendant, Gordon, became adminis-
trator de bonis non on his estate, and as such filed a bill to mar-
shal the assets of the estate, alleging that the firm was insolvent;
that it owed many thousand dollars. It further appears that
Gordon himself was a creditor of Harris to the amount of sev-
eral thousand dollars. It further appeared that the note which
was traded really belonged to a company of which the defend-
ant, Gordon, was an official, and represented a debt that had
been extended from time to time. It was also disclosed that, at
the time this note was given, several judgments were outstand-
ing against Harris founded upon debts due by the firm of which
he was a member. One witness testified that soon after the ne-
gotiation of this note the defendant admitted to him that Harris
was insolvent, and his paper utterly worthless. This the de-
fendant neither denied nor explained. Knowledge of these
facts, if not amounting to an absolute knowledge of the insolv-
ency of the maker of this note, was certainly sufficient to tend
to prove that insolvency in the language of the statute, and to

charge the conscience of the defendant with the duty of impart-
ing the knowledge he had to an innocent purchaser with whom
he was dealing through his agent.    What Justice Hall quoted in
*Hunt* v. *Dunn,* 74 *Ga.* 124, from *Jordan* v. *Pollock,* 14 *Ga.* 157,
might well be applied to the facts in this case:    " That notice is
sufficiently actual which, by the proof either positive or pre-
sumptive, brings home to the purchaser such knowledge of the
circumstances as authorizes the clear and satisfactory conclusion
that he had notice of the prior encumbrance, or such as renders
proper the conclusion that he was, or should have been, put upon
inquiry."    "Such notice is, in the language of Sir Edward
Sugden, 'good notice,' and is so, because it authorizes a conclu-
sion which affects the conscience of the purchaser, and makes it
a legal fraud in him to buy under the circumstances."    " If, un-
der such notice, he afterwards buys, ' mala fides marks the trans-
action.' "

3. Objection was made by defendant's counsel, and error as-
signed thereon, to certain questions asked by the judge of one of
defendant's witnesses while on the stand.    Chapman, the agent
of the defendant, had on the direct examination by defendant's
counsel, testified to the fact that the note of Harris used in the
purchase of the piano was a part of the assets of the Progress
Loan and Improvement Company, of which company the defend-
ant was an officer and a creditor, and that the note was taken
from Harris in renewal of prior notes to the company.    After
the examination in chief had been concluded, plaintiff's counsel
stated that he had no questions for the witness; whereupon the
judge began to interrogate the witness as to payments made by
Harris upon the indebtedness for which the note was given, and
as to renewals of notes for the same debt, and as to when the
witness first proposed to the plaintiff to use the note in the pur-
chase of the piano, why he used the note for this purpose,
whether the defendant suggested it, or whether he, the witness,
conceived in his own mind this method of selling the note.    He
then put the following questions:    " You voluntarily decided
to take some of the assets of the improvement company and use
them in buying an article for Gordon ?"    "You just volunta-
rily conceived the idea ?"    "It was your idea, and not Gordon's,

that you put these notes in as part of the trade?" While unquestionably the trial judge has a right to ask a witness upon the stand such questions as he thinks might elucidate the issue, or give information which the jury should have, yet caution should be used by the presiding judge in conducting the examination in such a manner as not to reflect either upon the credibility of the witness, or to indicate in the mind of the court any bias or prejudice whatever for one party or the other. The rather rigid cross-examination and repeated pressure upon the witness on a particular point in his testimony might possibly have been calculated to lead the jury to infer that the judge had very decided convictions in his own mind as to what was the real truth of the transaction. The form and character of the questions at this particular point of the trial had too much the appearance of the court taking charge of the plaintiff's case. We can not, therefore, approve the way in which the judge conducted this examination. But under our view of this case, the verdict is manifestly correct, and we do not think the court's interference by interrogating the witness is so serious as to require a new trial.

4. There were several other grounds taken in the motion for a new trial which are unnecessary to be considered, as we have dealt with all that seem to have any merit in them. The charge of the court construed as a whole fairly covered the issues in the case, and the verdict being clearly right in the light of the entire testimony, the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring.*