BULLOCK v. CRUTCHER.    (No. 1517.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 18, 1915.)

1. APPEAL AND ERROR ⬤⟾854 — REVIEW — RIGHT DECISION ON WRONG GROUND.

Where the judgment is right on the case made by the pleadings and evidence, the fact that the trial court may have based it on the wrong ground is no reason for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408-3424, 3427-3430; Dec. Dig. ⬤⟾854.]

2. VENDOR AND PURCHASER ⬤⟾38—REMEDIES OF VENDOR—RESCISSION—FRAUD.

In a vendor's suit to cancel a deed and to recover the land, where it appeared that he took in payment a note payable to the purchaser and indorsed by him "without recourse," secured by a mortgage on a horse sold by the purchaser to the maker, and that the purchaser knew that the horse had an incurable disease of which the

vendor was ignorant and concealed it, the vendor, who would not have accepted the note had he known that the mortgage security was worthless, was entitled to cancel the deed and recover the land, notwithstanding the note was so entirely valueless as to justify judgment in his favor on the ground of no consideration for his deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 61-65; Dec. Dig. ⬤⟾ 38.]

3. FRAUD ⬤⟾17—MISREPRESENTATIONS—CONCEALMENT.

Each party to a contract is bound to communicate to the other his knowledge of material facts, where he knows the other party is ignorant thereof, and they are not open or equally within his observation, and his concealment of such fact is as much a fraud as if the existence of the fact were expressly denied or the reverse of it expressly stated.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 15; Dec. Dig. ⬤⟾17.]

Appeal from District Court, Franklin County; J. A. Ward, Judge.

Suit by W. C. Crutcher against G. B. Bullock. Judgment for plaintiff, and defendant appeals. Affirmed.

In June, 1914, appellee sold and conveyed certain land to appellant, taking as payment therefor a note for $100, made by one McGuire February 16, 1914, payable to the order of appellant November 15, 1914, and indorsed by him "without recourse." The note was for the purchase price of a horse sold by appellant to McGuire. To secure its payment McGuire, at the time it was made, executed and delivered to appellant a mortgage on the horse and on two bales of cotton, which he expected to grow during said year 1914 on land owned by one Burns. The suit was by appellee to cancel the deed he made to appellant and to recover the land. It was commenced November 23, 1914. As grounds for the relief he asked, appellee alleged that appellant represented to him that the horse covered by the mortgage given to secure the note was a sound one, and worth more than the amount of the note; that he relied upon the representation, and thereby was induced to accept the note in payment for the land; that the truth was that the horse was unsound and valueless. Appellee further alleged that McGuire, the maker of the note, was insolvent, and that the note and the security given therefor were worthless. In his petition appellee tendered the note to appellant. The trial court found as facts that McGuire was a negro tenant farmer, that he was insolvent, and that the note was of no value. The court further found that the horse covered by mortgage made to secure the note was a "locoed" horse, and valueless "for any practical purpose to which horses are customarily and commonly put"; that the disease the horse suffered from was the latent one; and that appellee knew of the condition of the horse at the time he traded the note to appellant and failed to tell him about it. Appellee testified that he

---

did not consider the mortgage, so far as it was on the cotton to be grown by McGuire, to be of any value, because "landlords in this country usually had the cotton (grown by their tenants) all used up in supplies," and that in conveying the land to appellant he "depended solely on Mr. Bullock's representation of the value of the security on the note, and that was the horse." Appellee further testified:

"He [appellant] said the horse was well worth the $100, a young horse, 6 years old, 16 hands high, and in good shape. I would not have executed the deed otherwise. If I had known the true condition of the horse, I would have not executed the deed."

Appellant, testifying as a witness, denied that he made to appellee any representation as to the value of the horse, but further testified that he knew, at the time he sold the horse to McGuire and traded the note to appellee, that the horse was a "locoed" horse, and said nothing to either McGuire or appellee about the fact. It appeared from the testimony that a "locoed" horse was one that had become crazy as a result of eating a poisonous weed, and that the affection was incurable. The appeal is from a judgment granting to appellee the relief he sought.

B. O. Shurtleff and H. L. Wilkinson, both of Mt. Vernon, for appellant. L. W. Davidson and R. T. Wilkinson, both of Mt. Vernon, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] From the trial court's findings of fact and conclusions of law it appears that he was of the opinion the note was wholly worthless, that the deed to appellant therefore was without a consideration, and on that ground granted to appellee the relief he sought. The finding that the note was worthless was based on evidence showing McGuire, its maker, to be insolvent, and the horse mortgaged to secure the note to be "locoed," and therefore practically valueless, and, evidence showing, as the court thought, the security afforded by the cotton mortgaged to be worthless because of the fact that McGuire's landlord had a lien on the cotton for more than its value, which was entitled to priority over the lien of the mortgage. It is insisted that the testimony was not sufficient to support a finding, either that the horse was valueless, or that the security furnished by the mortgage on the cotton was of no value. In the view we take of the case it is not necessary to determine whether this contention should be sustained or not, for we are of opinion that it suffi-

ciently appears from the record that if appellee was not entitled to the relief given to him on the ground assigned by the court, he was entitled to it on the ground of fraud practiced on him, whereby he was induced to make the conveyance of the land. If the judgment is right on the case made by the pleadings and evidence, the fact that the trial court may have based it on the wrong ground is not a reason why it should be reversed. Green v. Cross, 79 Tex. 130, 15 S. W. 220.

[2, 3] The trial court found that the disease from which the horse suffered constituted a latent defect. He further found that appellant knew the condition of the horse. We think it sufficiently appears from the record that appellee did not know of the defect, and that appellant knew he did not know of it. Under such circumstances we think it should be held that it was appellant's duty to advise appellee that the horse was a "locoed" one. That the horse suffered from an incurable (as a veterinary doctor testified) disease which rendered him practically valueless certainly was a fact material to appellee in determining whether he should accept the note in payment for the land or not; for the security furnished by the mortgage for the payment of the note necessarily was diminished to the extent that the disease affected the value of the horse. It further appearing without dispute in the testimony that appellee would not have accepted the note for the land had he known that the security therefor, so far as it depended upon the horse, was practically valueless, it seems to us a case was presented which entitled appellee to the relief he obtained, notwithstanding it may be true that the note was not so entirely valueless as to justify judgment in his favor on the ground that there was no consideration at all for the deed. The rule has been stated to be that each party to a contract—

"is bound in every case to communicate to the other his knowledge of material facts, provided he knows the other to be ignorant of them and they be not open and naked or equally within the reach of his observation." 14 A. & E. Ency. Law, p. 73.

And by another writer as follows:

"If a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exist, the concealment is as much a fraud as if the existence of the fact were expressly denied or the reverse of it expressly stated." 20 Cyc. pp. 16, 17. And see Smith on Fraud, §§ 9, 10, 11; Rice v. Silverston, 170 Ill. 342, 48 N. E. 969; Elliott v. Clark, 157 S. W. 437; Gordon v. Irvine, 105 Ga. 144, 31 S. E. 151; George v. Taylor, 55 Tex. 101.

The judgment is affirmed.