J. W. CROWDUS DRUG CO. v. NICHOLS et al.    (No. 7681.)

(Court of Civil Appeals of Texas. Dallas. Feb. 17, 1917. Rehearing Denied April 21, 1917.)

1. CONTRACTS ⊜⇒214 — TIME FOR PERFORMANCE—"WHEN WORK IS COMPLETED."

Where a contract for waterproofing plaintiff's basement provided for final payment "when work is completed," the time for performance did not end when defendant stated that work was completed, and where defendant made further efforts to repair it, and the time for final payment was such as agreed upon by parties or determined judicially.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 980-995.]

2. CONTRACTS ⊜⇒321(4)—PLACE OF WORK—RIGHT TO RELY ON WORKMAN'S STATEMENT—RECOVERY OF AMOUNT PAID.

Where a contract for waterproofing plaintiff's basement provided for final payment "when work is completed," plaintiff could rely on defendant's representation that the work was com-

plete, and, when it subsequently appeared that this was not the fact, could recover amount paid.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1509-1518, 1519, 1519½, 1522.]

3. CONTRACTS ⊜⇒305(1)—PLACE OF WORK—RIGHT TO RELY ON WORKMAN'S STATEMENT—WAIVER.

Where plaintiff, after knowledge of defendant's failure to waterproof basement as agreed, permitted defendant to continue with the work, he waived right to maintain action based upon defendant's previous representations as to completion of work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398-1400, 1467-1475.]

4. CONTRACTS ⊜⇒212(2) — CONSTRUCTION — TIME OF PERFORMANCE—ABSENCE OF STIPULATION—"REASONABLE TIME."

It is elementary that where a contract is silent as to time of performance a reasonable time is meant, and what is a "reasonable time" depends upon nature and character of the thing to be done and circumstances of the particular case, together with difficulties attending its accomplishment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 947-951.

For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

5. CONTRACTS ⊜⇒176(10)—REASONABLE TIME FOR PERFORMANCE—QUESTION FOR JURY.

Unless facts are undisputed, the question of what is a reasonable time for performance of a contract is for the jury; its determination involving a mixed question of law and fact.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 956, 979; Trial, Cent. Dig. § 326.]

6. CONTRACTS ⊜⇒212(1) — REASONABLE TIME FOR PERFORMANCE—EVIDENCE.

Evidence, showing that defendant in waterproofing plaintiff's basement had 10 months within which to complete work, but only worked about 42 days, and performed the greater part of the work in the first 19 days, defendant testifying that "about a year" was necessary for the work, and it being evident that the time consumed exceeded that which the parties had contemplated, and the evidence showing an inability to do the work rather than insufficiency of time, held to show an allowance of reasonable time for performance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 944-946, 952-955.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the J. W. Crowdus Drug Company against S. W. Nichols and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Seay & Seay and Ralph W. Malone, all of Dallas, for appellant. Edward P. Dougherty and Dabney & Townsend, all of Dallas, for appellees.

RASBURY, J. Appellant sued appellees Nichols and American Surety Company to recover $650 paid appellee Nichols on his undertaking to repair and make absolutely dry the basement to appellant's storehouse, performance of which was guaranteed by the Title Guaranty & Surety Company, whose obligation had been reinsured or assumed by appellee American Surety Company, and with which it was alleged appellee Nichols had

failed to comply. Appellees' defense was that appellant denied appellee Nichols a reasonable time in which to complete the repairs and refused him entry into the basement for that purpose. Further, that appellant, due to the fact that it had permitted appellee Nichols to re-enter the basement after all parties had assumed that the repairs had been successfully accomplished, and perform additional work thereon and expend money in that behalf, was estopped from recovering the full amount paid appellee Nichols, but was in law entitled only to recover such amount, less the sum expended after such re-entry.

There was trial by jury to whom the court submitted but one issue, to wit:

"Was the defendant Nichols prevented by the plaintiff from having a reasonable time for the completion of the work?"

The jury answered the issue so submitted in the affirmative. Upon such answer, judgment was entered that appellant take nothing by its suit and that the appellees recover their costs.

The substance of the undisputed facts and those deducible from the verdict of the jury essential to the disposition of the issues tendered on appeal are these: The contract between appellant and appellee Nichols was in the form of a letter addressed by appellee Nichols to appellant dated July 15, 1913, which, omitting address and signature, is as follows:

"I will guarantee that my material and workmanship will make your basement absolutely dry for a period of two years and all work will be done to the satisfaction of owners. I am furnishing a bond for the full amount and it will be in effect for one year. The contract for this work is eight hundred and fifty dollars ($850.-00). Payments to be made as follows: Two hundred dollars on July 19th, three hundred dollars on July 26th, and one hundred and fifty dollars when work is completed, the balance of two hundred dollars to be paid ninety days after completion."

Appellees Nichols and the surety company executed their joint and several obligations in the sum of $850, the condition of which was to save appellant harmless from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of appellee Nichols' contract with appellant for a period of one year. Appellee Nichols entered upon performance of his contract July 14, 1913. On July 18, 1913, he collected $200 named in the contract as payable July 19, 1913. On July 26, 1913, he collected the $300 payable on that date by the contract. On August 2, 1913, he collected the $150 payable by the contract when the work was completed. The remainder of the contract price was to be paid within 90 days after completion of the contract. When the $150 was paid on August 2, 1913, both appellee Nichols and appellant believed that the work was completed in such manner as to make the basement absolutely dry, and appellee claimed to have "finished" the work at that time, and testified in detail concerning the character and amount of the work done, but says that he notified appellant at the time that it was possible that leaks would subsequently develop. It seems that at that time there was in fact a leak discharging about five gallons of water in two minutes. However, appellee, about three weeks subsequent to the time he thought the work was finished, on a telephone call from appellant went into the basement and found a few leaks had developed. Subsequently, the basement continuing to leak, appellee worked intermittently on the basement from August 2, 1913, to approximately April 30, 1914, the dates as shown by an itemized statement kept by appellee being September 14, 1913, October 5, 1913, November 11, 1913, December 6, 1913, January 22, 23, and 24, 1914, April 4, to May 9, 1914. In addition to the expense incurred by appellee for the work prior to August 2, 1913, he actually expended in said basement, in a further attempt to repair same so as to make it absolutely dry, the sum of $258. It also appears from the testimony of appellee Nichols that in making such repairs in leaky basements it is impossible to tell when the work is finished, since the stopping of a series of leaks increases the pressure against the weakest portion of the wall or floor and causes same to break at another point, which in turn must be repaired, and that on such jobs it required from two to three weeks for the new leaks to develop. When appellee finished his last work on the basement and had "convinced" himself that the basement was absolutely dry, he received notice from appellant on May 15, 1914, that it had sued him on his contract. While the record fails to show when the suit was filed, the notice appellee refers to was appellant's letter of that date stating that it had given the surety company formal notice of its intention to hold the surety company on its bond for appellee's alleged failure to comply with his contract, and the conclusion cannot be drawn therefrom that it was notice of the filing of suit as appellee claims. Subsequent to the foregoing notice, appellee made no attempt to further repair the basement. However, in the following June or July appellee and his attorney and a representative of the surety company and appellant's attorney were at appellant's office for the purpose of adjusting the matter of the threatened suit. While there, appellee's attorney asked appellant's president, J. T. Berry, if he was willing for appellee to then undertake the work of making the basement absolutely dry. Berry declined. Appellee was willing to again take up the work. The basement was not absolutely dry at that time. Appellee Nichols, after testifying that he was familiar with the time required to waterproof a basement like appellant's, further testified that "it would take about a year to waterproof" appellant's basement.

Appellant's first assignment of error com-

plains of the court's action in overruling the general demurrer leveled by appellant against the sufficiency of the pleading upon which appellee went to trial; but, in view of the conclusion we have reached upon a consideration of the second assignment of error, it will not be necessary to consider said assignment or others that follow.

The second assignment complains of the action of the court in submitting to the jury for their determination whether appellant denied appellee a reasonable time in which to complete the work, and several propositions are asserted in that connection; one in substance being that of the time of performance. Appellee's attitude is that, no time for performance being stipulated by the contract, it became a question of fact for the determination of the jury.

[1-3] In reference to appellant's first contention, we conclude that it cannot reasonably be said that the time for performance ended when appellee demanded the $150. That sum was due upon completion of the work. It did not follow, however, that the work was in fact completed because demand for the payment due at completion of the work was made. True, appellee represented that the work was completed and believed it was, yet very soon afterwards it developed that the work was not complete. Thus on a fair analysis of the contract it is obvious, we think, that the provision of the contract we are discussing merely fixed the time when the $150 should be paid, such time to be agreed upon by the parties or determined judicially. And we also are of opinion that appellant had the right to rely on appellee's representation that he had complied with his contract and so relying would, when it subsequently appeared that appellee failed to do so, have been entitled to recover the amount paid, had he proceeded accordingly. But having agreed, after knowledge of appellee's failure, that appellee might re-enter upon the work and again endeavor to comply with his contract, appellant waived the right to maintain an action based upon appellee's representations. As a consequence the question arose: Did appellee, from the inception of the work until the time when appellant refused permission to continue it, have a reasonable time in that respect?

[4, 5] It is elementary that where the contract is silent, as it is in the present case, as to the time of performance, the law infers that a reasonable time was meant. It is said in Hart v. Bullion, 48 Tex. 278:

"What is a reasonable time depends undoubtedly upon the nature and character of the thing to be done, the circumstances of the particular case, and the difficulties surrounding and attending its accomplishment. As an abstract question, what is a reasonable time for performance may be one of law; but, unless the facts upon which its determination depends are admitted, its determination involves a mixed question of law and fact, and must be determined by the jury," etc.

The effect of appellant's second contention, in the light of the rule quoted, is to assert that, admitting all the facts developed by appellee's testimony and found by the jury, it nevertheless appears that he did have a reasonable time in which to perform his contract and failed. The jury having by their verdict adopted appellee's theory of the facts, the issue raised must be considered from the standpoint deducible from appellee's evidence. Appellee alone testified concerning the character of the work, and the difficulties attending its accomplishment.

[6] While we have stated the facts deducible from appellee's testimony, we briefly restate them in order to include others tendered in explanation of the delay, to wit: In repairing such a basement as appellant's, all leaks are first to be located and stopped; when such leaks are stopped, the hydrostatic pressure of the water is diverted and finds outlet from other portions of the wall where it is weakest, the leaks ordinarily developing in from three weeks to a month, whereupon the new leaks are to be stopped and other possible leaks awaited and those in turn stopped. Or, as appellee puts it, "you just keep fighting them until you get them all stopped." With such knowledge of the character and manner of doing the work, appellee entered upon performance of his contract July 14, 1913, and found "hundreds of leaks" in the wall, which he stopped, and which he says constituted 98 per cent. of the leaks. He continued his work until August 2, 1914, and at that time had "covered" the entire basement, and at which time the basement was dry save a few damp spots, and at which time he claimed his contract was finished. About three weeks subsequent, in answer to telephone call from appellant, he inspected the basement and found a leak which he repaired. The basement continuing to leak, appellee made repairs therein September 14th, October 5th, November 11th, December 6th, in the year 1913, January 22d, 23d, and 24th, and April 4th, to May 9th, in the year 1914. About this time appellee was of opinion that he had gotten the basement absolutely dry and was awaiting developments. On May 15, 1914, he received notice from appellant that he had failed in his contract and that appellant would demand of appellee and the surety company a refund of the moneys paid. Appellee made no further attempt to work on the basement, but in June or July, while he and his attorney and the representative of the surety company and the attorney of appellant were in appellant's office in an effort to adjust their differences, he offered, upon the suggestion of his attorney, to again attempt to repair the work, which appellant refused to permit him to do. Appellee also testified, as one familiar with such work, that a reasonable time in which to repair appellant's basement was "about a year." Such are the essential and material facts deducible from appellee's testimony,

and the verdict of the jury imports no more than that. We have not stated the evidence adduced by appellant, which in many respects is in flat contradiction of that of appellee, for the reason that we are, of course, to observe the findings of the jury in that respect.

We have reached the conclusion, drawn from the facts admitted by appellee to be those upon which his rights rest, that he did have such reasonable time in which to complete the repairs to the basement as was contemplated by his contract. From the time he commenced work in the basement until he was denied admission thereto was 10 months. It is obvious, in such connection, that it was never contemplated by the parties that so much time would be required to complete the work. The contract itself contemplates that but a brief period would be required in which to complete the repairs, since it provides that $200 should be paid July 19th, 5 days after appellee commenced work, $300 July 26th, 12 days after appellee commenced work, and $150 when the work was completed, which all the parties thought was August 2d, or 7 days after the second payment, which several payments constituted $650 of the total contract price of $850. The balance of $200 to be withheld 90 days after completion, during which time presumably the parties believed all defects would develop. Such was evidently appellee's theory, for after having worked on the basement from July 14, 1913, to August 2, 1913, a period of 19 days, he claimed the work was finished and demanded and received the $150 which was to be paid on such completion. After that period, more than 9 months had passed, and the basement was still leaking. Yet from the time he had finished his work until he was denied admission in the basement he worked in the basement at intervals, a total of only 41 days, the most of the time being in April and May, 1914, nearly 8 months after the period when the bulk of the work had been done, and during all of which time it was evident the work was incomplete and during which time he could have been at work completing it. It is true that appellee, as counsel urged, spent the sum of $258.10 during said time; but, since he was obligated to spend whatever amount was necessary to make the basement absolutely dry, we are constrained to believe that fact is of no assistance in determining what was a reasonable time in which to finish the work. It is also true that appellee testified that he could only determine by the lapse of time whether his work was finished, due to the fact that new leaks might develop. We believe such testimony to be without probative or controlling force, since it indicates inability to cure the defect, rather than a fact or condition contemplated by the parties. To so hold would be to allow a reasonable time in which to complete a given undertaking and to extend the time when it developed subsequently that the work was incomplete, with the result that reasonable time would in all cases depend upon the willingness of the person bound to again undertake that in which he had originally failed. It is to be remembered that leaks were continually developing during the period of 10 months allowed appellee, the first one being about 3 weeks after he claimed to have finished it, and then again in September, October, November, December, January, April, and May—at least appellee was engaged in repairing them at that time—and to say that he was entitled to still further time in which to finish the work is to obviously extend the time so as to make it unreasonable. Each occasion of appellee's re-entry upon the work was notice that it was unfinished, and we think clearly that on each such occasion it was his duty to expeditiously and finally complete the work. It is true, also, that appellee gave it as his opinion, based upon his familiarity with such work and the appellant's basement, that a reasonable time in which to finish the work "was about a year." It may first be said that he had "about a year" when he was allowed 10 months. Further, the general opinion of appellee that it would require about a year, taken in connection with his testimony that the greater portion of the work was in fact accomplished in the first nineteen days of his labor, indicates conclusively that the time allowed was reasonable.

Holding the views we do with reference to the law arising upon the admitted facts, it becomes our duty to reverse the judgment of the trial court and here render judgment for appellant.

Reversed and rendered.