## GEO. FINBERG CO., Inc., v. JAMISON.

### (No. 2303.)

(Court of Civil Appeals of Texas. Amarillo. April 2, 1924.)

**1. Factors ⊂⊃7—Where contract covering loan of cotton provided that lender could close it out "any time he sees fit," a reasonable time is presumed.**

Where a contract covering a loan of bales of cotton by defendant to plaintiff, on which plaintiff advanced money, provided that defendant could close out the cotton at "any time he sees fit, on the basis price of" the plaintiff, and that if no price could be agreed upon defendant would take back an equal amount of cotton of the same grade, defendant had a reasonable time within which to close out the deal.

**2. Contracts ⊂⊃212(2)—In absence of stipulation, reasonable time implied.**

In the absence of a stipulation fixing the time of performance, the law fixes a reasonable time.

**3. Contracts ⊂⊃175(2)—Circumstances and conversations between parties competent to show reasonable time for performance.**

In ascertaining what is a reasonable time for performance of a contract in which no time

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

is fixed, the circumstances of the particular case, including conversations between the parties, are admissible.

**4. Factors ⬥⬥45—Burden of showing that closing out of cotton transaction was within reasonable time held on plaintiff.**

Where plaintiff borrowed from defendant a quantity of cotton, advancing money thereon, under a contract whereby defendant could close out the cotton "any time he sees fit," and plaintiff, upon defendant's refusal to close out the cotton, sold it and sued defendant for the difference between the amount advanced and the sales price, *held*, that plaintiff had the burden of showing that his action in closing out the cotton was at such time as was reasonable under the contract.

**5. Appeal and error ⬥⬥854(2)—Correct decision, based on erroneous reasons not reversed.**

Where a case has been correctly decided by the trial court, it will not be reversed because the decision was based on erroneous reasons.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by the Geo. Finberg Company, Inc., against J. B. Jamison. Judgment for defendant, and plaintiff appeals. Affirmed.

Kirby, King & Overshiner, of Abilene, for appellant.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

RANDOLPH, J. This suit was instituted in the district court of Wichita county, by appellant, as plaintiff, against appellee, to recover damages for an alleged breach of contract. This contract is in words as follows:

"This contract, entered into by and between the Geo. Finberg Company, Inc., party of the first part and J. B. Jamison, party of the second part, Witnesseth:

"Party of the second part agrees to loan party of the first part one hundred and fifty bales of cotton, against which party of the first part is to advance him thirty-two cents a pound on the compress weights of the same, deducting all f. o. b. charges from the draft. Party of the second part can close this cotton out any time he sees fit on the basis price of the party of the first part, final settlement to be made on the original compress weights and by the copy of the class sheets furnished him.

"Party of the second part further agrees that in the event a price cannot be agreed on that he will take back one hundred and fifty bales of cotton equal in grade to the one hundred and fifty loaned party of the first part at thirty-two cents a pound, all f. o. b. charges being deducted, and that final settlement shall be subject to mutual weights.

"Signed in duplicate this 19th day of September, 1918.　　　　Geo. Finberg Co., Inc.,
　　　　　　　　　　"By L. W. Grayson.
　　　　　　　　　"J. B. Jamison."

Plaintiff alleged in his petition that in pursuance of such contract the defendant delivered to the plaintiff, on or about the 19th day of September, 1918, 149 bales of cotton aggregating 69,413 pounds, on account of which plaintiff paid to defendant the sum of $22,097.14, at the rate of 32 cents per pound. It is further alleged that by the expression, "any time he sees fit," was meant a reasonable time; that cotton was a product of fluctuating value, and any unreasonable delay in the return of said cotton would probably subject one or the other of the parties to a great loss; that, during the six weeks following the delivery of said cotton by the defendant to plaintiff, defendant had failed and refused to exercise his option to close out said cotton; that on or about the 1st day of November plaintiff requested of the defendant to exercise his option, or, if he did not desire to exercise said option, that he receive back from plaintiff 149 bales of cotton theretofore borrowed; that defendant refused to exercise his option and refused to take back said cotton, alleging as his reason that he (defendant) had a large quantity on hand and did not desire to take back the 149 bales until he got ready to sell; that plaintiff repeatedly requested the defendant to exercise his option or take back the cotton; that on or about the 13th day of December, 1918, the plaintiff notified the defendant in writing that it was ready to close out or return the 149 bales of cotton borrowed, and that if defendant did not close out or take back said cotton, the plaintiff would, on the 3d day of January, 1919, close out the same at the best available price, and bill against the defendant for all balance that might be owing plaintiff by defendant on account of said transaction; that plaintiff closed out the 149 bales at a price of $28.60 per pound, which was the reasonable market value of said cotton at Wichita Falls, and gave the defendant credit for the sum of $19,806.36, which was the total amount received by the sale of said cotton, and charged the defendant with the difference between such sums so received and the amount received by defendant for such cotton; such balance amounting to $2,290.79. On the failure and refusal of defendant to pay such sum, the plaintiff instituted suit against him for debt in that amount, and also prayed in the alternative that, if it be not entitled to recover judgment for such sum in debt, that it recover same as damages.

Defendant answered by general demurrer, general denial, and special answer that at the time of the execution of the contract it was agreed and understood between him and defendant that the cotton was in truth and in fact turned over to defendant at the price therein stated, as an accommodation to plaintiff, and that plaintiff was entitled to nothing, and that on the 13th day of December,

1918, cotton had begun to drop in price, and that plaintiff attempted to take advantage of the peculiar wording of the agreement and attempted to force defendant to sell the cotton, and defendant thereupon demanded in writing, through his attorney, that plaintiff should stand by the contract. Further defendant alleged that plaintiff's claim was transferred to the National Bank of Commerce of Wichita Falls, and at that time defendant informed said bank that he was ready to accept the cotton which was then selling around 39 cents per pound, and defendant offered in his said pleading at the time of filing his answer to accept said cotton. The trial court having rendered judgment for defendant, appeal was taken to this court.

The following statement of facts is taken largely from appellant's brief, and is made here that it may make clear the rulings made by us:

J. B. Jamison, in September, 1918, had on hand in the city of Wichita Falls, Tex., probably 300 or 400 bales of cotton. This cotton ran from low to high, containing approximately 150 bales that would run middling. In September, 1918, the corporation, known as the Geo. Finberg Company, was engaged in buying and selling cotton, and had an agent and buyer in the city of Wichita Falls, by the name of L. W. Grayson. The Geo. Finberg Company had made a contract in August, 1918, to sell some high grade cotton for delivery on September, 1920; this cotton going to Japan. Mr. Finberg, who was at Abilene, Tex., where the main office of the corporation was located, took up the matter with Mr. Grayson, his agent at Wichita Falls, and asked Mr. Grayson to obtain the 149 bales of high grade cotton needed to fill out the contract. Grayson tried to buy the 149 bales needed from Mr. Jamison. He was advised by Jamison that he was not selling any of his cotton. Mr. Grayson then requested Mr. Jamison to loan them the cotton. Jamison advised Grayson that he had never loaned any cotton before, and was advised by Grayson that it could be arranged so that Jamison could get his money out of it and use the money. Grayson then prepared a contract in substance, being an ordinary cotton consignment contract, specifying 60 or 90 days, and requiring Jamison to margin the cotton. Under this contract the Finberg Company could close out Jamison within the time specified. Jamison refused to sign this contract, stating that he might not want to sell his cotton in 60 or 90 days, and did not want to margin the cotton. Grayson then wrote the contract sued on, which was signed and executed by both parties. In the conversation relative to this last contract, Grayson said to Jamison:

"Now I don't hardly see how you can go back on a contract like this; you can use this money in your business. I cannot sell you out; you will not have to margin it."

And Jamison then signed the contract. Grayson then "topped" Jamison's cotton and selected the 149 bales of the grade of middling or better. During the month of November, Grayson saw Mr. Jamison and asked him to take the cotton back, and on December 13, 1918, the Geo. Finberg Company, by L. W. Grayson, addressed a letter to Jamison, in which the company informed Jamison that they were either ready to close out the cotton or return it to him, and offering to give the cotton to him in lots of 50 bales each, and containing other stipulations not important here. Jamison answered such letter and advised the company that he would hold it to a compliance of the terms and conditions of the contract. The letter of December 13th also contained notice to Jamison that they would, on the 3d day of January, close out same unless he acted as above requested. Jamison taking no action, the company thereupon sold the cotton and charged Jamison with the loss by reason of the difference in price.

The various assignments of error and propositions thereunder present numerous matters for our determination, but the decision of the following questions, which present themselves as paramount, effectively dispose of the case: These two questions are: (1) Was the action of the court in overruling plaintiff's exception to paragraph 3 in defendant's answer, wherein plaintiff excepted to such paragraph on the ground that the matter therein alleged attempted to vary a written contract by parol evidence, erroneous, and was the admission of parol evidence by the trial court to sustain the allegations of such paragraph erroneous? (2) Under the terms of the contract providing, "Party of the second part can close his cotton out any time he sees fit, on the basis price of the party of the first part," no time being stated in the contract in which the defendant was required to act, did it devolve on plaintiff or on defendant to show that the defendant did not act within a reasonable time in so closing out such cotton, and was it not the duty of the plaintiff to show that the sale of the cotton by it was made within a reasonable time after the failure of such defendant?

[1-3] The contract providing that the cotton was to be closed out by the defendant at any time he sees fit, such provision is to be construed as requiring him to do so within a reasonable time. It is to be presumed that parties signing an instrument do so for a definite purpose, and that the performance of the obligation of the contract is to take place within some reasonable time. In the absence of a stipulation fixing the time of performance, the law fixes a reasonable time, and in ascertaining what is a reasonable time the circumstances of the particular case, in-

cluding conversations between parties, may be introduced in evidence. 6 R. C. L. § 283, p. 897; Hart v. Bullion, 48 Tex. 289; Crowdus Drug Co. v. Nichols (Tex. Civ. App.) 194 S. W. 484.

As to what constitutes reasonable time for the performance of a contract is a mixed question of law and fact, when no time is fixed for its performance. Potter County v. Boeson (Tex. Civ. App.) 191 S. W. 787.

The contract providing that the defendant had the right to close out the cotton "at any time he sees fit" makes the performance thereof dependent on defendant's will, and the law implies an engagement that it shall be executed in a reasonable time, and the defendant could not indefinitely postpone the time for performance by preventing the event from occurring, 13 C. J. § 176, pp. 684, 685.

The evidence disclosing that, upon being approached by plaintiff and being presented with a contract providing that the performance thereof was limited to "from 60 to 90 days," defendant declined to accept or sign same for the reason that it would compel him to exercise his option to close out or to be sold out at a time that he would not want to sell; that defendant was a cotton merchant; that he would have on hand at one time as many as several hundred bales of cotton; and that he had held some of his cotton from one fall to another—justified the court before whom the case was tried in holding that the plaintiff, having acted in face of this evidence within less than 90 days, did not act within a reasonable time. The very thing that the defendant had declined to lay himself liable to was precipitated upon him by the action of the plaintiff.

[4] The burden was on the plaintiff to establish his cause of action, and every element required to sustain that cause of action must have been so established. The refusal of the defendant to close out the cotton or to accept the return of same must have been shown by the plaintiff, as well as the further facts that this refusal of defendant so to do was at a time when it could reasonably have been demanded of defendant, and for that reason their own action in closing out the cotton was at such time as was reasonable under the contract. This it failed to do.

[5] The allegation of appellant that the trial court was in error in some of his findings does not require us to reverse the case, if the case has been correctly decided by the trial court, based upon erroneous reasons. Speed v. Sadberry (Tex. Civ. App.) 190 S. W. 781; Calvin v. Neel (Tex. Civ. App.) 191 S. W. 791; Bullock v. Crutcher (Tex. Civ. App.) 180 S. W. 940.

The decision of the questions above discussed renders it unnecessary for us to discuss other assignments of error, as such other assignments have become immaterial by reason of our holding herein.

The judgment of the trial court is in all things affirmed.