## HATT v. WALKER.

### No. 10683.

Court of Civil Appeals of Texas. Dallas.
Oct. 16, 1930.

Rehearing Denied Dec. 6, 1930.

R. L. Stennis and Crate Dalton, both of Dallas, for appellant.

D. A. Frank and W. B. Hamilton, both of Dallas, and A. W. Walker, Jr., and Robert W. Stayton, both of Austin, for appellee.

VAUGHAN, J.

This suit was instituted November 3, 1922, by appellant, George A. Hatt, against appellee and his trustee, H. W. Walker, who died before the trial of said cause, and having no interest therein appellant's suit against said trustee and his estate was dismissed. Appellant's cause of action was for an injunction to restrain appellee and his trustee from proceeding with the foreclosure of the vendor's liens upon the following described real estate, viz., lots Nos. 11 and 12 in block 1, east half of lot 4, and also lots Nos. 5 to 10, inclusive, in block 11 third installment of Mt. Vernon, an addition to the city of Dallas, located in Dallas county, Tex., under the powers of sale contained in certain deeds of trust executed by appellant to said Walker, as trustee, for the use and benefit of appellee.

As grounds for the relief sought, appellant alleged: That the trustee was attempting to foreclose on the lots described in said deeds of trust, for a greater indebtedness than was actually due, in that, credit had not been given for certain payments made on the notes secured thereby; that by agreement with appellee, he was entitled to certain discounts on said notes with which he had not been credited; that on or about July 23, 1918, when he purchased from appellee 20 shares of stock in the Burk-Electra Petroleum Company, appellee entered into a written contract with him, whereby appellee agreed that, if appellant would invest any sum up to $5,000 in oil stocks, under the direction of appellee, and appellant should not be pleased with his investment, appellee would purchase said stock from appellant, and pay appellant therefor the amount invested by him, with interest at the rate of 10 per cent. per annum compounded; that prior to October 3, 1922, appellant had elected to return the stock purchased by him under the direction of appellee, viz., 30 shares in the Burk-Electra Petroleum Company and 20 shares in the Sherman-Dallas Oil Company, and asked that the amount due under said alleged agreement be offset against his indebtedness on the purchase price of said lots, and that he have judgment against appellee for the excess. The injunction, as prayed for by appellant, was granted upon his petition.

Thereafter, appellee filed his original answer, in which he alleged that appellant was entitled to credit for payments made on the vendor's lien notes, as alleged in his petition, but denied that he had agreed to give appellant discounts upon said notes, as claimed by

him. Appellee also admitted he had executed a contract on July 23, 1918, to appellant, whereby he agreed to purchase certain oil stock from appellant (purchased by appellant under his direction) if appellant was was not pleased therewith, and to pay him the amount of his investment with 10 per cent. interest; however, appellant denied that said contract was unlimited as to time of duration, as claimed by appellant, but that same was limited for a period of one year from its date as the time in which appellant had the right to exercise his option to rescind the purchase so made by him, on the ground that he was not pleased with the stock so purchased; and further alleged that said contract was applicable only to the stock of the Burk-Electra Petroleum Company, and had no application whatever to the Sherman-Dallas Oil Company, or to the stock of the Walker Consolidated Petroleum Company, for which appellant had exchanged the stocks purchased by him in the Burk-Electra Petroleum Company and the Sherman-Dallas Oil Company. Appellee further alleged that, even if the contract was as alleged by appellant, he had forfeited the' right of claiming the benefit of such privilege before the filing of this suit, having failed to exercise said privilege within a reasonable time after the purchase of said stock by him, and could not now claim the benefits thereof. Under appropriate allegations, appellee also prayed for judgment against appellant for the amount due on the vendor lien notes sued upon, and for the foreclosure of his liens existing to secure the payment of same, on the above-described real estate.

The pleadings of both appellant and appellee were amended and supplemented from time to time before the case came to trial upon its merits; however, the above, taken from the original pleadings, presents the substantial issues in the case. As an aid to a ready and comprehensive view of the case, we make the following chronological statement of the facts giving rise to this litigation:

On four separate occasions, between April 21, 1915, and March 18, 1916, appellant purchased from appellee the above-described 8½ lots, for an aggregate consideration approximately $9,775. Said lots were sold under four separate contracts, and appellant made payments on said contracts of purchase, to and including October 21, 1919, at which time appellee executed four deeds conveying the said 8½ lots to appellant. Said deeds recited an aggregate unpaid purchase price of $6,863.52, and in each the vendor's lien was retained to secure the unpaid balance. Appellant also executed four series of vendor lien notes, each series containing four notes of $428.97 each, maturing one, two, three, and four years after date, respectively, being the unpaid balance of the purchase price of the lots. Said four series of notes were secured respectively by four deeds of trust executed by appellant to one H. W. Walker, trustee, covering in the aggregate the 8½ lots so purchased. Subsequent to the execution of the deeds to said lots and down to October 1, 1920, appellant made payments on said notes, but since that date no payments, either of principal or interest, had been made. During October, 1922, two years after appellant had made payments on said notes, either of principal or interest, the trustee H. W. Walker, at the request of appellee Walker, the holder and owner of said notes, advertised for sale said 8½ lots, under the power of sale contained in the deeds of trust.

On or before July 23, 1918, appellant and appellee entered into another business transaction entirely unrelated to the transactions above set out. At that time, appellant purchased from or through appellee 20 shares of stock in the Burk-Electra Petroleum Company, a Texas corporation, paying therefor its par value of $2,000. On March 3, 1919, appellant purchased 5 additional shares of stock in said corporation for a consideration of $500, and on May 3, 1919, an additional 5 shares at the same price. On December 3, 1919, appellant also purchased from or through appellee 20 shares in the Sherman-Dallas Oil Company, also a Texas corporation, paying therefor its par value of $2,000. Whether these stocks were owned by appellee individually or constituted part of the treasury stock of said corporations, respectively, does not definitely appear from the record.

Appellant received cash dividends of 2 per cent. per month upon his stock in the Burk-Electra Petroleum Company from the time of his purchase down to March 5, 1920, aggregating upon his 30 shares of stock in said company the sum of $960; he also received dividends upon his 20 shares in the Sherman-Dallas Oil Company, from the time of his purchase to March 5, 1920, but the amount thereof does not appear in the record.

On March 5, 1920, the Burk-Electra Petroleum Company and the Sherman-Dallas Oil Company, in which appellant owned the above-mentioned 50 shares, were merged with two other companies, by vote of the stockholders of each of the four said companies, into one corporation known as the Walker Consolidated Petroleum Company, a corporation organized under the laws of the state of Texas. The stock of the Burk-Electra Petroleum Company passed into this merger on the ratio of 4 to 1, appellant receiving 120 shares of the par value of $12,000 in the new company for his 30 shares in the Burk-Electra Petroleum Company. The stock of the Sherman-Dallas Oil Company went into the merger on a ratio of 2½ to 1, and appellant received 50 shares of the par value of $5,000 in the new company in lieu of his 20 shares in the Sherman-Dallas Oil Company, making

a total of 170 shares in the new company, of the par value of $17,000 received by appellant for his original 50 shares. Appellant received from the Walker Consolidated Petroleum Company two cash dividends of 3 per cent. each, totalling $1,020, and a stock dividend of 10 per cent. The last dividend was paid on October 1, 1920.

Following are the special issues submitted and answers made thereto by the jury:

"Issue No. 1: Did the written agreement signed by A. W. Walker, dated July 23, 1918, limit the time to one year in which the plaintiff, Geo. A. Hatt, might return the stock to Walker if he was not pleased with it, and receive from Walker the amount of money he had paid for the stock, with interest from date of purchase? Answer 'yes' or 'no,' as you may find. Answer: yes.

"If you have answered 'yes' to question No. 1 above, then you need not answer the following questions, Numbers two and three, but if you have answered 'no' to question No. 1, then you will answer the following two questions: (The two issues will be hereafter set out.)"

Issues submitted at the request of appellant:

"No. 1: Did the defendant, A. W. Walker conceal from plaintiff the true condition of the companies in which plaintiff had received stock until after plaintiff received the last cash dividend paid to him? Answer 'yes' or 'no.' Answer 'no.'

"No. 2. Did defendant, A. W. Walker, represent to plaintiff that the company in which said defendant was delivering to plaintiff certain shares of stock was solvent and earning dividends? Answer 'yes' or 'no.' Answer 'yes.'"

"No. 2-A. Did plaintiff rely upon such representations, if any, in purchasing and receiving said stock? Answer 'yes' or 'no.' Answer 'yes.'

"No. 2-B. Were such representations, if any, true? Answer 'yes' or 'no.' Answer 'yes.'"

On April 24, 1929, the court rendered judgment on the above verdict in favor of appellee Walker on the vendor lien notes for the sum of $8,351.18, and for foreclosure of the vendor liens on the above-described lots, and that appellant take nothing by his suit against appellee upon the contracts of purchase relating to stock in the oil companies.

■ Appellant contends, by his proposition No. 1, that the judgment rendered by this court on the appeal by appellee from the judgment of the lower court refusing to dissolve the temporary writ of injunction granted appellant on his petition, presenting several grounds for the relief sought, restraining appellee and his trustee from selling the real estate herein described, pending the trial

of this cause in the lower court on its merits, was such a pronouncement upon the rights of the parties as to require the trial court, on the subsequent hearing of this cause on its merits, to accept the ruling on said appeal as stare decisis of the questions of fact that were not in any respect adjudicated in such former appeal, further than to determine that the trial judge had not abused his discretion. This contention cannot be sustained. This court, on the former appeal, ruled that appellant was only entitled to have enjoined the sale advertised by the trustee to be made under the terms of the deeds of trust until a trial should be had upon the merits of the cause of action, as alleged by appellant against appellee. This was not an adjudication, further than to stay the threatened sale of said real estate, until the rights of the parties in reference thereto, under the issues made by their respective pleadings, should be heard and determined on the facts. Welsh v. Carter (Tex. Civ. App.) 30 S.W. (2d) 354. The temporary writ of injunction was granted on a petition setting out, in effect, three grounds as the basis for the equitable relief sought. Appellee's motion to dissolve presented primarily the question whether or not the trial judge had abused his discretion in refusing to dissolve said writ of injunction. This court, in passing upon that question, viewed same in the light of the grounds alleged for the equitable relief sought, and, without a written opinion, affirmed the decree of the lower court made on said motion. No trial was had in the lower court upon the merits of the case, and, it appearing from the record that the subsequent trial of the case, from which the present appeal was prosecuted, was had on the merits, that the pleadings, issues, and evidence were entirely different from those involved upon the appeal from the motion to dissolve, and therefore, as the ruling of this court could have been based upon matters not involved in the present appeal, same did not in any way settle or announce the law of the case to be followed upon the subsequent trial of the case upon its merits. Appellant's petition disclosed that he asked for an injunction because the trustee was attempting to sell the 8½ lots for a greater indebtedness than was actually owing on the notes secured by the deeds of trust thereon, in that, credit had not been given appellant for certain payments alleged to have been made by him upon said notes, and also because certain alleged discounts upon the purchase price of the lots had not been allowed, and as germane to the above grounds, he alleged the execution of a contract by and between appellant and appellee with reference to the purchase of 50 shares of oil stock from appellee or under his direction, and asked that the amount due thereunder be allowed as an offset against said vendor's lien note. In reference to this phase of the case, it may be

stated that the motion to dissolve was made and the appeal prosecuted therefrom upon the grounds that appellee had admitted the credit for payments made upon the notes as requested by appellant in his petition, and as to the discounts upon the purchase price of the lots claimed by appellant, appellee contended that the same were not, as a matter of law, allowable, and that as the evidence upon the motion to dissolve showed that appellee was not insolvent, as alleged by appellant, he had an adequate remedy at law upon the alleged contract with reference to the purchase of the oil stock, and hence no equitable grounds existed for continuing the injunction in force. Therefore the judgment of this court rendered in said former appeal can only be construed as amounting to a holding that the lower court did not abuse its discretion in refusing to dissolve said temporary writ in the light of the various conflicting issues made by the record, and no more can be said as to the effect of said ruling than that same was purely interlocutory and not final and did not settle the law to be followed upon the trial of the merits as same did not settle the facts, not having been rendered on the same pleadings and evidence involved on this appeal. Amsler v. Cavitt (Tex. Civ. App.) 271 S. W. 139, 141. Said proposition is therefore overruled.

In its natural order, appellant's second counter proposition should be here reviewed; however, for reasons that will later be disclosed, the discussion of same is for the present deferred.

Appellant contends, by his proposition No. 2b, that it was reversible error for the court to give the following instruction to the jury: "The burden of proof is upon the plaintiff to show facts entitling him to have question No. 1, answered 'no' and question No. 3 answered 'yes.' Also to show facts entitling him to have question No. 2 answered: 'All stock purchased.' The burden is upon the plaintiff to likewise show facts entitling him to have Special Issues Nos. 1 and 2 and 2–A answered in the affirmative, and to have issue 2–B requested by him answered, 'no' "—and urges that the giving of same was erroneous, harmful, and prejudicial to appellant, in that it placed the burden of proving the negative of a defensive matter upon appellant. Appellant alleged and prayed for recovery upon a contract in the following words:

"This memorandum witnesseth that Geo. A. Hatt has bought 20 shares of the capital stock in Burk-Electra Petroleum Company for the sum of $2000. And it is agreed by me that if George A. Hatt invests in oil under my direction $5000 or a less amount and that if he is not pleased with his purchase I agree to purchase his stock from him, pay to him compound interest on the note of 10 per cent per annum on said amounts from date of purchase. Witness my hand this the 23rd day of July, 1918."

Appellee in part answered as follows:

"Defendant denied that he made or executed a contract of the kind and terms claimed by plaintiff in his petition, and says that if plaintiff has any such contract, it was never signed nor executed by this defendant, nor by anyone authorized by him to execute the same, all of which he is ready to, and does, verify.

"Defendant denies specifically the making of an agreement on July 23, 1918, or at any other time, as set out in plaintiff's petition, wherein it is alleged that defendant agreed, without any limitation of time whatsoever, to receive back all stock or any stock that plaintiff might purchase in the oil companies under the direction of this defendant, and to return to plaintiff all money paid by him in payment for said stock, up to the sum of $5000.00, together with interest at the rate of 10% from date, if plaintiff should not be pleased with his purchase. Defendant admits the making of an agreement whereby for a period of twelve months from July 25, 1918, he agreed to take back certain stock purchased by plaintiff and to return the amount for same, together with 10% interest from time of purchase, but he never at any time made any agreement without any definite time limit expressly stipulated in the agreement itself. The agreement actually made by this defendant with the plaintiff has long been inoperative and a nullity by reason of the expiration of the time limit of twelve months from the date of making said agreement, to wit, July 23, 1918."

Appellant, by his supplemental petition, in part alleged:

"On to wit, July 23, 1918, under representations made to plaintiff by the defendant, A. W. Walker, and the written agreement executed by the said A. W. Walker and referred to in plaintiff's original petition, plaintiff purchased from said A. W. Walker twenty shares of the capital stock of the Burk-Electra Petroleum Company of the par value of $100.00 each and thereafter, on July 23, 1918, and on March 17, 1919, and on each of said dates, plaintiff purchased from said A. W. Walker five shares of said stock in said company, making thirty shares in all and aggregating the par value of $3000.00 and plaintiff paid said A. W. Walker $100.00 per share in cash at the dates of such purchases, aggregating the sum of $3000.00 paid by plaintiff to said A. W. Walker in cash for said thirty shares of stock and each and all of said shares were purchased by plaintiff under the written agreement and representations made by said A. W. Walker as aforesaid.

"Thereafter, on December 3, 1919, plaintiff purchased from said A. W. Walker twenty shares of the capital stock of the Sherman-

Dallas Oil Company of the par value of $100.-00 each and paid plaintiff therefor on said date the sum of $2000.00 in cash; that said twenty shares of stock were purchased by plaintiff from said A. W. Walker under the agreement and representations made by said A. W. Walker to plaintiff as aforesaid."

By his supplemental answer, appellee pleaded: "Defendant denied all and singular the allegations in said pleadings contained."

Appellant testified that he was present when appellee wrote the contract, that it was in longhand, and that the copy introduced in evidence by him, supra, was a correct copy thereof made by him immediately after the original was delivered to him by appellee.

Mrs. Keebaugh, witness for appellant, testified that the contract was in appellee's handwriting; that same was exhibited to her by appellant; that she read it over carefully three times; that it was in longhand and in the handwriting of appellee; and that in substance the contract provided that:

"George Hatt had bought 20 shares of the capital stock of Burk-Electra Per $2000.00, and it was agreed that if George Hatt invested $5000.00 or less in or under the direction of Judge Walker, and if he was not pleased with his investment the Judge agreed to buy the stock from him and pay him ten per cent compound interest on the investment."

Appellee and his witness Mrs. Ferguson testified that the contract was typewritten and limited to one year from date of purchase of the stock, and both testified, in effect, that the principal thing wrong with the instrument introduced as a copy of the original contract was that it did not contain "Burk-Electra Petroleum Company" and "was not limited to twelve months"; that these were "the most vital differences in the contract." Mrs. Ferguson, in reference to the preparation and contents of same, testified that she wrote the contract on the typewriter; that same was very short, did not contain more that five or six lines, and, was, in substance, "the number of shares, price paid for them, and a statement of the effect that, if Mr. Hatt became dissatisfied with the purchase of the stock within one year from that date, that Judge Walker would return the purchase money paid for it, together with, I think, ten per cent added to the purchase price. Judge Walker agreed to return the money paid by Mr. Hatt for the stock within one year from date of the contract after Mr. Hatt became dissatisfied."

Appellant testified that in September, 1922, he had in his possession the original of the contract sued upon, contradicted himself as to whether he had it in his trunk or at a bank in another town, claimed it was in the tray of his trunk and was lost among some shirts in the lower part of the trunk, and produced the copy admitted in evidence, which he claimed he made in his bedroom from the original before it was lost. The charge objected to related to and embraced the special issues submitted and answered by the jury, supra.

▮ In ordinary litigations, the general issue is presented by a general denial, and in an action on a written contract the general issue is completely presented by a general denial supported by a plea of non est factum —the two by articles 2006, 2010, subd. 8, R. S. 1925, present every species of rebuttal that is possible being of equal dignity with a general denial in the ordinary branches of litigation. Under the pleas presented by appellee, the burden of proof was not shifted, because of the issues raised thereby, from the appellant to appellee, but rested upon appellant to show that the matter offered in evidence by appellee by way of rebuttal was not true. Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Com. App.) 7 S.W.(2d) 521; New Amsterdam Casualty Co. v. Rutherford (Tex. Civ. App.) 26 S.W.(2d) 377; Boaz v. Harris (Tex. Civ. App.) 30 S.W.(2d) 810; Galveston, H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534; Colorado & S. Ry. Co. v. Rowe (Tex. Com. App.) 238 S. W. 908.

▮ Appellant, under his propositions Nos. 3, 4, and 5, contends that the court having properly instructed the jury that the special issues submitted should be "answered from a preponderance of the evidence in this case," it was reversible error to instruct the jury that the burden of proof was upon appellant as to special issues Nos. 1, 2, and 3 submitted by the court, and Nos. 1, 2a, and 2b submitted at the request of appellant, in that, the vice in the charge criticized was but a further emphasis laid upon the burden of the proof as to said special issues. What we have said and the conclusion reached in the matter of disposing of appellant's next preceding proposition applies with equal force to said propositions Nos. 3, 4, and 5, and same are overruled. In this connection it may be observed that in the main charge the court instructed the jury to "answer all of the issues from a preponderance of the evidence," which in no respect placed the burden of proof upon either party to the suit, and this phase of the case was presented by a separate explanation, to the effect that the burden of proof was upon appellant to show facts entitling him to have favorable answers made to said issues. This we do not think unduly emphasized that the burden of proof as to such issues was upon appellant; therefore, not harmful or prejudicial to him, as said charge did not repeat or stress in any respect that the burden of proof was upon appellant.

The court refused to submit to the jury special issue No. 4 requested by appellant, viz., whether the instrument of date July 23, 1918, introduced in evidence by appellant,

was a correct copy of the contract executed by appellee July 23, 1918.

Appellant alleged in hæc verba the contract claimed to have been made by appellee on and of date July 23, 1918. Appellant and his witness Mrs. Keebaugh testified that the original contract sued on did not limit the time to one year within which appellant might return to appellee the stock purchased by him under said contract, and that the purchase of stock under said contract was not limited to stock appellant might buy in the Burk-Electra Petroleum Company; and further testified that said instrument introduced in evidence by appellant as a copy of the original contract was a true and correct copy thereof. Appellee, by the testimony of himself and witness Mrs. Ferguson, admitted that a contract of date July 23, 1918, was executed by appellee and was as claimed by appellant, except as to two features thereof, viz., that the language of the contract named the stock purchased on date of the contract to be "stock of the Burk-Electra Petroleum Company," and fixed the time limit within which the stock so sold should be repurchased by appellee to be within one year from date of the contract. All other issues theretofore raised by the pleadings of the parties had disappeared at the time of the trial of the cause, except the issue created by the controversy between appellant and appellee, viz., whether or not the contract made by and between them of date July 23, 1918, was as claimed by appellant, or as alleged by appellee, which was submitted by the court as follows:

"Did the written agreement signed by A. W. Walker dated July 23, 1918, limit the time to one year which the plaintiff, George A. Hatt, might return the stock to Walker, if he was not pleased with it, and receive from Walker the amount of money he had paid for the stock with interest from date of purchase."

This language, in a clear and positive manner, submitted to the jury for their determination the controversy between the parties upon which the right of appellant to recover necessarily depended, and presented, not in the language selected by appellant, but in appropriate language, the theory of his case, viz., that appellee had executed to appellant a contract as he had alleged. No other issue was left to be submitted, and to secure a proper determination thereof it was only necessary to submit questions Nos. 1, 2, and 3, contained in the court's charge, it not being necessary to answer Nos. 2 and 3, if No. 1 should be answered "yes," as such answer would terminate the litigation in favor of appellee against the contention of appellant, in that a finding that the contract limited the time to one year in which appellant had the privilege of returning to appellee the stock purchased under said contract would make further findings by the jury unnecessary under the uncontroverted proof that appellant had not, within said time limit, sought to avail himself of that right. On the other hand, if the jury had answered said special issue No. 1 in the negative, it would have been necessary to complete the disposition of the controversy between appellant and appellee for questions Nos. 2 and 3, submitted by the court, to have been answered, viz.:

"No. 2: Did the written contract referred to in question No. 1 provide that A. W. Walker would, under certain conditions named in the contract repurchase from Hatt all stock purchased by Hatt under direction of Walker, or did it limit the agreement to repurchase to such stock only as Hatt might buy in the Burk-Electra Company? Answer, 'all stock purchased' or 'stock in Burk-Electra Company,' as you may find. Answer: ————.

"No. 3: Did the plaintiff, Hatt, within a reasonable time from the date he purchased the stock in question become displeased with his ownership of the stock, and request Walker to take the stock back, and return to him what he had paid for it, with interest? Answer 'yes' or 'no,' as you may find. Answer: ————."

Questions Nos. 2 and 3, answered favorable to appellant, would have established the contract to be as alleged by him. The issue raised by the pleadings was whether or not the contract contained provisions as to time limit and named the stock to be purchased as that of the Burk-Electra Petroleum Company, as alleged by appellee, the execution of the contract, as alleged by appellant, having been in all other respects admitted by appellee in his pleadings and testified to by himself and his witness Mrs. Ferguson. Therefore, the trial judge obeyed the mandate of the law, in that, he only submitted for the determination of the jury the controverted questions of fact raised by the pleas and the evidence in the case. Articles 2185 and 2189 R. S. 1925; Roth v. Travelers' Protective Ass'n of America, 115 S. W. 31 (5 Sec. Syllabi) 102 Tex. 241, 132 Am. St. Rep. 871, 20 Ann. Cas. 97. Said propositions are overruled.

Appellant's proposition No. 9, viz., "Where the vital issue of the trial of a case is as to the correctness of the copy of a contract, it is encumbent upon the court to admit all proper evidence bearing upon the authenticity and genuineness of the copy submitted," challenges the ruling of the court in excluding certain testimony of his witness Mrs. Keebaugh, given by deposition. This proposition and assignments upon which same is based will have to be sustained, if the court excluded testimony of said witness to the effect that the instrument admitted in evidence as a copy of the contract of date July 23, 1918, was a correct copy thereof. On this issue we find that the following testimony of said witness was admitted:

"I know Judge Walker. I met him first I believe in his home in the spring of 1918. * * * I was agent for Judge Walker in selling oil stock. I sold Burk-Electra before it was merged into the Walker Consolidated, and then I bought back Burk-Electra just before the merger in March 1920. I was in his office quite often. I held also a contract dated August 9, 1919, for selling Sherman-Dallas oil stock for Harold Walker. I worked, of course, out of Judge Walker's office. I saw the contract involved in this lawsuit. In February 1920 I first was told of a contract. I was shown the contract by George A. Hatt in March 1920. He told me in February 1920 he had a contract but I didn't see the contract until March 1920. I saw the contract that Mr. Hatt told me he had. * * * I asked him what kind of a contract he had and he went out and came back in a few minutes with a piece of paper, which he handed me. I read it carefully three times. Carefully I noted the signature, and it was exactly the same as that attached to the many papers which I had in my possession. * * * The contract that Mr. Hatt showed me was in the handwriting of Judge A. W. Walker and signed by Judge A. W. Walker. I identified this contract as being in the handwriting of Judge Walker and signed by him at the time I saw it. As to the substance of the contract, it said that George Hatt had bought 20 shares of the capital stock of Burk-Electra for $2000.00, and it agreed that if George Hatt invested $5000.00 or less in oil under the direction of Judge Walker, and if he was not pleased with his investment, the Judge agreed to buy the stock back from him and pay him 10% compound interest on the investment. The contract which the notary has exhibited to me purporting to be a copy of the contract he had with Judge Walker contains in substance the same as the one he (Hatt) showed me at the time I was at his residence in 1920. (The contract which the notary exhibited as above stated, supra.) * * * The contract did not contain a clause limiting it as to time. The amount was $5000.00 or less. * * * The interest was to be computed of course from the date the contract was made, July 23, 1918."

■ The evidence excluded was at least only a repetition of the above admitted testimony, and could not have added any probative effect to the evidence of said witness, received, to the effect that said instrument was a correct copy of said original contract. In other words, the evidence excluded, if admitted, would have been only a duplication of portions of the evidence admitted on that issue. Therefore, appellant's several propositions based upon the exclusion of the testimony of said witness are overruled.

Appellant's propositions Nos. 10 and 11, based upon alleged improper argument of one of appellee's counsel, and his proposition No. 12 based upon alleged insufficiency of the testimony to support the verdict of the jury, and claiming thereby that it was shown that the jury was swayed by passion, and his propositions Nos. 13 and 14, challenging the sufficiency of the evidence to support the findings of the jury that the three oil companies, involved directly and indirectly in the litigation, were solvent, have been carefully considered, and finding no merit in same, each of said propositions is overruled.

■■ Appellant, by his eighth proposition, contends that the court failed to submit both the theory of appellant upon which he was entitled to recover and the defensive theory of appellee, in that, the court did not submit the issue as to the date the time limit of one year ran from, whether from the date of the contract or the date of the purchase of the oil stock thereunder. The court did not submit an issue in this respect and neither was one requested by either appellant or appellee. Was this omission error? The record shows the presence of evidence upon which a finding could be based that would support the judgment rendered, viz., Mrs. Ferguson testified that said contract contained, among other things, the following provision, "If the said George A. Hatt becomes dissatisfied with the purchase of his stock within one year from this date, he can return his stock"; that "Mr. Hatt was limited to one year after date in which to make his surrender of the stock."

Therefore, under the authority of the following provision of article 2190, R. S. 1925, "upon appeal or writ of error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding," we must treat said issue as found by the trial court, in such manner as to support the judgment, viz., that said contract by its terms provided that appellant was limited to one year from its date in which to return the stock purchased by him, and to demand the refund of the purchase price paid for same with interest thereon at the rate of 10 per cent. per annum. Said proposition is therefore overruled.

By his fifteenth proposition, appellant seeks to prosecute this appeal with effect, on the ground that the trial court erred in refusing to grant him a new trial on account of misconduct of the jury. The assignment on which said proposition is based states the alleged misconduct to be as follows: "That one Birmingham, who was one of the jurors, after the argument of counsel, and after the jury had retired to consider the evidence in the case, and while they were considering the same, and before the verdict was rendered, argued to the jurors that he, Birmingham, knew the family of A. W. Walker, the defendant, and knew their standing in Alabama

was high; that their veracity could not be questioned, and that the veracity of A. W. Walker, defendant, could not be questioned; and that the said argument to the jury was prejudicial to the plaintiff, for the reason that the issues of fact were closely drawn and plaintiff and defendants were the principal witnesses as to many facts set out (testified to)."

The following is substantially the testimony adduced before the court on the hearing of the motion for a new trial: For this hearing all of the jurors, except Birmingham, who was out of Dallas county, was supœnaed and all testified except him and Juror Formby, and a juror whose name is not disclosed in the record. Three of the nine jurors testified to a statement by Birmingham referable to that mentioned in the motion for a new trial, their versions being somewhat different as to what the statement of juror Birmingham consisted of, upon which the alleged misconduct was based. Juror Finger testified: "Birmingham made some statements * * * with reference to having known Mr. Walker's family. He said that he had known Judge Walker's people and that they were people of high reputation; that they all had money." Juror Menton testified that Juror Birmingham said: "He knew his people or knew of them. As to whether he made any statement recommending them himself, or anything like that, I think he just said that he knew that they were all good straightforward people." Juror Morris testified: "With reference to whether I heard any juror, Mr. Birmingham or anybody else, say that he knew Judge Walker, or knew Judge Walker's people, and that they were all good people, and that they were people of unquestioned veracity, or anything like that, or wealthy, I will say, it seems to me that I heard something like that. I don't remember that he said that if Walker was from that sort of a family why probably he was telling the truth. I don't remember any such statement as that." The foreman, and the other five jurors who testified, stated in effect that they did not hear any statement of the character mentioned in the motion, and four of them—Cass, Dodd, Wallace, and Dowd—testified to an opportunity to have heard whatever was said in the jury room. Juror Dowd testified upon this subject as follows: "I didn't hear Mr. Birmingham or any other juror make a statement to the effect that he had known Judge Walker or the Walker family, and that they were all good people, or anything of that kind, I participated in the discussion and heard the discussion and I didn't hear any statement of that kind made by anybody. No juror gave to the jury any information that he had about his knowledge of Judge Walker, or the Walker family at all. The discussion was in reference to the evidence and what the evidence showed, and on that the verdict was rendered. There was

nothing said in the jury room, or out of the jury room, with reference to the standing of the Walkers, or the credibility of Mr. Walker, or anything like that; I didn't hear it discussed at all." Juror Wallace, called by appellee testified: "I didn't hear Mr. Birmingham or any other member of the jury say that they knew Judge Walker or the Walker people, and that they were all good people and people of unquestioned veracity, or anything of that kind." Each of the three jurors whose testimony tended to support the alleged grounds of misconduct testified that no statement by Birmingham had any influence upon their verdict. There was no testimony introduced as to any statement in regard to appellee personally. The verdict was returned April 4, 1929, and the affidavit of Juror Formby as to the alleged misconduct was made a month later, and two months had elapsed from the date of the verdict before hearing was had on the motion for a new trial.

 The grounds upon which the motion for a new trial was overruled are not contained in the record. Juror Formby, who made the affidavit as to the facts alleged to constitute misconduct, was not called as a witness. From the testimony introduced at this hearing there arose a conflict upon an issue of fact for the determination of the trial judge, viz.: Whether or not the misconduct as alleged, occurred, whose determination of that issue upon the facts before him can only be set aside upon the same ground that the verdict of a jury upon issues of fact may be disposed of adversely to the findings made thereon by a jury. This question has been so thoroughly settled by the following decisions that we do not deem it necessary to do more than cite same as authority for overruling this assignment, on the ground that there was evidence before the trial judge sufficient to sustain the findings made, and that in reaching his conclusion upon this feature of appellant's motion for a new trial, he did not abuse his discretion in holding that the facts did not show misconduct of the jury within the meaning of article 2234, R. S. 1925: Hines v. Parry (Tex. Civ. App.) 227 S. W. 339; Allbright v. Smith (Tex. Com. App.) 5 S.W.(2d) 970; Sandifer v. Fort Worth Nat. Bank (Tex. Civ. App.) 8 S.W.(2d) 512, 513; Texas & Pacific Ry. Co. v. Aaron (Tex. Civ. App.) 19 S.W.(2d) 930, 935; Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889; Moore v. Orgain (Tex. Civ. App.) 291 S. W. 583.

We will now review appellant's second proposition in the light of appellee's second counter proposition in support of the judgment rendered. By this proposition, appellant contends that the court erred in submitting to the jury special issue No. 1, supra, in that same did not submit his theory of his cause of action affirmatively, but only sub-

mitted same in a negative manner. Appellee counters this as follows:

"Where an appeal is taken from the judgment of the court below denying the plaintiff a recovery upon an asserted contract, some of the provisions of which are in dispute, and it appears from all the evidence in the case that, even if the contract upon which the plaintiff seeks a recovery had been established as being in the exact language contended for by the plaintiff, nevertheless, the plaintiff, as a matter of law, would not have been entitled to a recovery thereon, and that no other judgment could properly have been rendered by the court below other than the one from which the appeal is taken, the judgment of the lower court will be affirmed upon appeal regardless of whether errors may have been committed in the trial of the case."

We will now discuss the case as if no other defense had been interposed by appellee to appellant's cause of action based upon the contract of date July 23, 1918, than that presented by section 8 of appellee's first amended original answer, viz.:

"Defendant further avers that, even if no definite time limit was fixed in the agreement by defendant with plaintiff, on July 23, 1918, which defendant denies absolutely and unqualifiedly, an unreasonable length of time of approximately three years elapsed before plaintiff sought to exercise such alleged right under said alleged agreement, and that after plaintiff accepted the stock in the Walker Consolidated Petroleum Company and received the cash dividends and stock dividends, and made no complaint whatever when the market was such that he would have sold out for a large sum of money in excess of what he paid for it, as the stock which he held in the Walker Consolidated Petroleum Company had a market value of from three to four times the amount which he had paid for the Burk-Electra and the Sherman-Dallas stock, and he is therefore estopped at this time from setting up any alleged contract made back in 1918; and that plaintiff did not seek nor make any effort to tender back the original stock purchased, neither did he make any effort to tender back the stock that was issued to him in the Walker Consolidated Petroleum Company, until after a large number of dry holes had been drilled, by the Walker Consolidated Petroleum Company, and the stock in this company had greatly depreciated in value. And this defendant says, had there been no time limit, such an unreasonable time has elapsed, in good conscience this plaintiff could not now claim any benefit of any agreement made back in 1918, as alleged in his petition, and having accepted said stock and retained the same and received the benefits thereof for so long a time, he is estopped from now recovering on his demand, and his demand has become stale."

It will now be assumed that the contract declared upon was in every respect just as alleged by appellant, viz., in the exact form and language of the asserted copy which appellant introduced in evidence. The legal effect of its language was a matter of law within the exclusive province of the trial court, no issue of fact being raised in reference to the construction to be placed upon any of its terms on account of being vague, indefinite, or doubtful of meaning in any respect. In the construction of this contract, two primary propositions are presented, viz.: (1) To the purchase of what stock was the contract applicable, and (2) when must the option of returning the stock be exercised? As to the first, the contract provides, "And it is agreed by me that if George A. Hatt invests in oil under my direction $5000, or a less amount * * *" viewed in the light of the entire context, the word "oil" can only mean oil stock, the purchase of which would confer some benefit upon Walker, for otherwise the contract would be a nudum pactum and without consideration. The contract therefore applies to oil stock then purchased and to be so purchased, and that such purchase would be beneficial to appellee. The element of time is a material consideration. Just when must such stock be purchased? Contemporaneous with the execution of said contract, or in the future under the direction of appellee, or to both, that which had been purchased and would thereafter be purchased? We think that it must be gathered from the terms of the contract that it applied to the 20 shares of stock stated in said contract to have been purchased and to any subsequent purchase of stock made, as provided for in said contract, under the direction of appellee, in an amount of $5,000 or less, and that the language, "If he is not well pleased with his purchase," embraced not only the 20 shares purchased at the date of the contract, but to any stock subsequently so purchased, not in excess of $5,000. When was it necessary for the option of returning this stock so purchased to be exercised to entitle appellant to the benefits of the option secured to him by said contract? Upon this point the contract reads, "And that if he is not pleased with his purchase I agree to purchase his stock from him and pay to him compound interest on the note at ten per cent per annum on said amounts from date of purchase." All that the above provision obligated appellee to do was to purchase the stock from appellant, if he was not pleased with his purchase. Said provision did not guarantee the stock nor the revenue to be derived therefrom, the right to exercise this option resting upon appellant not being pleased with his purchase. However, it is to be assumed from the above language that, on being called upon to purchase the stock acquired by appellant under the terms of said contract, on account of the fact that appellant was not pleased with his

purchase, appellee would be required to pay appellant the amount he had paid for said stock with interest thereon at the rate of 10 per cent. per annum from the date of purchase. The words "on the note" that found their way into the contract, being meaningless, are excluded from consideration, as the meaning of the remaining language of said contract without said words is clear and comprehensive.

 Under the language of the contract, when was appellant required to exercise his option? All that is said in said contract on this question is, "that if he is not pleased with his purchase, I agree to purchase his stock from him." Appellant contends that, since no time limit was provided for within which his option should be exercised, it was for an indefinite duration—in other words, that he might decide at any time in the remote future that he was not pleased with the stock purchased by him and elect to exercise his option to require appellee to repurchase it and pay him the price thereof with ten per cent. interest per annum compounded. Can this contention be sustained? We do not think so. It is well-settled law that an option of this character must be exercised within a reasonable time. McGary v. Campbell (Tex. Civ. App.) 245 S. W. 106, 115; Broughton v. Blalock, 17 Tex. 356; Weaver & Starnes v. King (Tex. Civ. App.) 98 S. W. 902; George Finberg Co. v. Jamison (Tex. Civ. App.) 260 S. W. 884; Street v. Case Threshing Machine Co. (Tex. Civ. App.) 188 S. W. 725; Vogel v. Moore (Ky.) 84 S. W. 557; Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101; Bush v. Merrill (Tex. Com. App.) 206 S. W. 834; Hart v. Bullion, 48 Tex. 278; Crowdus Drug Co. v. Nichols (Tex. Civ. App.) 194 S. W. 484; 2 Williston on Contracts, § 722.

The stock purchased by appellant and involved in this suit was purchased upon the following dates: July 23, 1918, March 3, 1919; May 3, 1919, December 3, 1919.

Appellant alleged that on October 3, 1922, and on various and sundry dates prior thereto, he elected to return, deliver, and transfer and sell said stock to appellee, and he testified that he made attempts to see appellee about this contract in September, 1921 (from letter written by appellant it appears that no definite demand was made until some time later); that about two and a half years had elapsed from the time the contract was entered into and the first purchase of stock was made before appellant decided that he was not pleased with his purchase and determined to exercise his option, and apparently three years elapsed before he made any definite demand upon appellee to comply with the terms of said option. During this period of time appellee received 2 per cent. dividends per month each month on his stock in the Burk-Electra Petroleum Company from the time of his purchase down to the merger of March 5, 1920, totaling $960; that he received dividends on his stock in the Sherman-Dallas Oil Company, the amount of which does not appear from the record; and that after the merger of March 5, 1920, he received two cash dividends of $510 each, upon his Walker Consolidated Petroleum Company stock, said sums so received amounting to $2,000 in cash dividends upon his $5,000 investment. It further appears that he could have sold his Burk-Electra Petroleum Company stock at a profit, which he refused to do, and that on various occasions appellant stated that he was well pleased with his purchase, and during the year following the making of the contract with appellee, turned down offers of the appellee to repurchase his stock. He was a party to exchanging the stock originally purchased by him in the Burk-Electra Petroleum Company and the Sherman-Dallas Oil Company for stock in an entirely new corporation, viz., the Walker Consolidated Petroleum Company, with which the Burk-Electra Petroleum Company and the Sherman-Dallas Oil Company had consolidated; said consolidation being with the consent of appellant and the other stockholders in said companies.

 We know to-day, as a matter of fact of which courts will take judicial notice, that the existence of or the duration of the existence of petroleum within the limits of a particular tract of land is uncertain; that it is of a fugitive and wandering character, and that neither from the opinions of geologists, nor from the formation of the surface and other indications of land, can it be said with reasonable certainty that a tract of land is oil-bearing and, if so, to what extent, and that a value placed on a tract of land as oil-bearing land may overnight be ascertained to be of no value as such; that when a producing well has been brought in the duration of same is uncertain, as well as the amount of its output; that producing wells promising a fortune for a short time may become worthless within a fortnight and lands supposed to be underlaid with oil-bearing sands and thereby having an apparent value as such may, by the failure to bring in an oil well contiguous thereto, cease to possess such apparent value. Therefore, the making of the contract without a time limit when the option therein provided for should be exercised, the parties thereto are to be held to have executed said contract with a knowledge of the uncertainties of the duration of the then apparent conditions which gave rise to the valuation that the parties thereto acted upon, to be measured and determined by the necessity for prompt action, viz., action without any uncalled for delay, that is, such delay as would give to appellant the right to speculate upon the value of his investment to the detriment of appellee on account of changed conditions that should have been

reasonably expected and could not be countered against. Bearing in mind the attitude of the parties, the subject-matter of this contract, and their relative rights and liabilities, we hold that a reasonable time for appellant to have exercised the option secured to him by said contract expired before he had elected so to do.

The contract being in writing, its construction in reference to what would be a reasonable time in which appellant was required to assert said option secured to him was a question of law for the court. McGary v. Campbell, supra, from which we quote as follows:

"Some authorities hold that the question of what is a reasonable time is one of law for the court, while others hold it is a question of fact for the jury. The proper view seems to be that it is a matter of law for the court, when it depends upon the construction of a contract in writing or upon undisputed facts, and that it is a question of fact for the jury when it depends upon facts extrinsic to the contract, and which are matters in dispute."

See also the following cases: Broughton v. Blalock, Weaver & Starnes v. King, Vogel v. Moore, Bush v. Merrill, Hart v. Bullion, Crowdus Drug Co. v. Nichols, 2 Williston, Contracts, supra.

We therefore hold that appellant so unreasonably delayed exercising the option granted by the involved contract that, as a matter of law, he was at the time suit was filed precluded from exercising such option, and that the judgment of the court below should be in all things affirmed.

Affirmed.